IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
ABDULLI FEGHOUL,                                    )
      Detainee, Camp Delta, Guantanamo     )
      Bay;                                          )
                  *Petitioner,*           )
                            )      **Petition for Habeas Corpus**
      v.                                            )      **Case No. 06-CV-00618**
                            )      **(RWR)**
                            )
GEORGE W. BUSH, *et al.*                        )
      President of the United States           )
      The White House                            )
      1600 Pennsylvania Ave., N.W.          )
      Washington, D.C. 20500                   )
                 *Respondents*          )
_____

**MOTION OF THE WORLD ORGANIZATION FOR HUMAN RIGHTS
USA IN SUPPORT OF PRO SE PETITIONER FOR LEAVE TO
PARTICIPATE AS AMICUS CURIAE OR AS ASSIGNED COUNSEL,
AND FOR EXTENSION OF TIME FOR THE SUBMISSION**

The World Organization for Human Rights USA ("Human Rights USA")

respectfully moves this Court for leave to participate in these proceedings as amicus

curiae, or as court appointed counsel, and to file the attached brief Amicus Curiae in

support of *pro se* Petitioner.  Human Rights USA and its Executive Director Morton

Sklar, a former Judge on an international court, and a member in good standing of the bar

of this Court, stand ready to accept the Court's assignment as counsel or as amicus to the

presently *pro se* Petitioner based upon the significance of the legal issues presented, and

the difficulties associated with having these important and complicated legal issues being

properly and adequately addressed on a *pro se* basis.

       The *pro se* Petitioner has no access to legal materials, and very restricted access to

legal assistance in the highly restricted detention facilities at Guantanamo Bay, Cuba,

making Petitioner's effort to present his case from the confines of Guantanamo Bay

substantially more difficult than in a typical *pro se* habeas claim.  Additionally, we note that the habeas petition originally was written in French, and that the translation and subsequent submission to the Court took an inordinate amount of time, raising other concerns about access to a translator or writing materials and ease of access to the Court, all of which are essential to mount a proper response to the Government and to pursue these habeas proceedings on an effective basis.  We ask the Court, in recognition of these difficulties, to assign us as counsel for the Petitioner, or to accept us as amicus curiae, to help facilitate the Petitioner's proper presentation of his case before this court.  The legal issues under scrutiny are complex and significant.  Leaving the Petitioner in the position of handling this matter on a *pro se* basis is not in the interests of justice, nor does it satisfy basic due process standards given the highly unusual and restrictive nature of the circumstances of his detention and his ability to properly represent his own interests.

We also ask the Court to forgive our submission's tardiness and to extend time for its submission given the importance of the present matter and the logistical complexities involved.  The Government took nearly twenty weeks to submit the Petitioner's initial filing with the court from the date it received it.  Under these circumstances our late response to the Government's Brief and Motion should be forgiven.  Counsel did not become aware of the Government's submission until July 5, 2006, just 16 days ago.  We ask that the normal time limits imposed by the Federal Rules not apply given the substantial restrictions placed on the Petitioner's ability to access legal research materials, and his inability to properly respond to the Government's Motion in his own rights on a more timely basis.

For these reasons, Human Rights USA respectfully requests that the Court grant this motion for leave to participate as *amicus curiae* or as assigned counsel, and further requests that the Court grant Human Rights USA leave to file the accompanying Brief To Participate As Amicus Curiae Or As Assigned Counsel In Support Of Pro Se Petitioner in the habeas case currently before this Court.  Respectfully submitted this 21st day of July, 2006 by:


_____/s/ Morton Sklar_____
Morton Sklar
Executive Director
(D.C. Bar No. 144139)
WORLD ORGANIZATION FOR HUMAN RIGHTS USA
1725  K  Street, N.W.  Suite 610
Washington, D.C.  20006
Tele:  (202) 296-5702
Fax:  (202) 296-5704
E-Mail:  msklar@humanrightsusa.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **ABDULLI FEGHOUL,** ) | |
| ) | |
| *Petitioner,* ) | |
| ) | **Petition for Habeas Corpus** |
| v. ) | **Case No. 06-CV-00618** |
| ) | **(RWR)** |
| ) | |
| **GEORGE W. BUSH,** *et al.* ) | |
| **President of the United States** ) | |
| ) | |
| *Respondents* ) | |
| ) | |
| ) | |

_____

**BRIEF ACCOMPANYING THE MOTION OF THE WORLD ORGANIZATION**
**FOR HUMAN RIGHTS USA FOR LEAVE TO PARTICIPATE AS AMICUS**
**CURIAE OR AS ASSIGNED COUNSEL IN SUPPORT OF PRO SE PETITIONER**

Morton Sklar, Executive Director
(D.C. Bar No. 14439)
Counsel for Amicus Curiae
Melissa Keyes, Legal Intern (Univ. of California at Hastings School of Law)
Matthew Sadler, Legal Intern (Boston College Law School)
WORLD ORGANIZATION FOR HUMAN RIGHTS USA
1725 K Street, N.W. Suite 610
Washington, D.C. 20006
Telephone: (202) 296-5702
E-mail: msklar@humanrightsusa.org

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT/LCvR 7.1 DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

The following information is provided consistent with the requirements for amicus submissions set out for the U.S. Courts of Appeals in LCvR 7.1 and Circuit Rule 26.1. Since detailed requirements for amicus submission are not provided in the Federal Rules of Civil Procedure for District Court submissions, the relevant standards set out in the Federal Rules for Appellate Procedures were used as a guide in making this submission.

Affected Case:
*Feghoul v. Bush,* No. 06-cv-00618

The World Organization for Human Rights USA is a not for profit 501(c)(3) corporation, incorporated in the State of Maryland and with its principle place of business in Washington, D.C.  We are the U.S. affiliate of a worldwide network of over 200 human rights organizations operating in different countries of the world as part of the World Organization Against Torture (Organisation Mondiale Contre La Torture or OMCT) international network, with the international secretariat located in Geneva, Switzerland.  Neither the international network, the secretariat, nor any other affiliate groups of the network exercise any control or controlling interest in the World Organization for Human Rights USA, nor does any other entity in the U.S. or elsewhere exercise such an interest.

We are not affiliated with, and do not represent any party in this case.

The views and analyses provided in this brief are our own, and have not been contributed to nor influenced in any way by any of the parties.

Two law school students from Boston College Law School and the University of California at Hastings contributed to the legal research and writing of this brief.

Although we work with volunteer attorneys from a number of law firms in the Washington, D.C. area on other cases and issues who assist us on a *pro bono* basis, none of these volunteer lawyers or law firms assisted us in the preparation of this brief.

Signed and certified to the 21st day of July, 2006 in Washington, D.C. by:

_____/s/ Morton Sklar_____
Morton Sklar
Executive Director
World Organization for Human Rights USA
1725  K  Street, N.W.  Suite 610
Washington, D.C.  20006
Tele:  (202) 296-5702
Fax:  (202) 296-5704
E-Mail:  msklar@humanrightsusa.org

**TABLE OF CONTENTS**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT……………………………………i

STATEMENT OF INTEREST OF AMICUS CURIAE…………………………………iv

TABLE OF AUTHORITIES……………………………………………………………viii

SUMMARY OF ARGUMENT……………………………………………………………...1

ARGUMENT……………………………………………………………………………...2

I.      THE PETITION SHOULD NOT BE DISMISSED OR TRANSFERRED
        BASED ON THE HABEAS-STRIPPING PROVISIONS OF THE
        DETAINEE TREATMENT ACT BECAUSE IT WAS SUBMITTED
        ONE AND ONE-HALF MONTHS PRIOR TO THE PASSAGE OF THE
        DTA, THOUGH THE GOVERNMENT DID NOT TRANSMIT IT TO
        THE COURT UNTIL AFTER THE ACT BECAME LAW…………..…………2

II.     THE COVERAGE OF PETITIONER'S HABEAS CLAIMS BY THE
        GENERAL PETITION FILED ON BEHALF OF GUANTANAMO BAY
        DETAINEES IN JOHN DOE 1-570 v. BUSH, IS ANOTHER REASON
        WHY THE PETITIONER'S CASE SHOULD BE CONSIDERED A
        PRE-DTA PROCEEDING NOT SUBJECT TO DISMISSAL OR
        TRANSFER UNDER THE DTA, BASED ON THE SUPREME
        COURT'S NON-RETROACTIVITY STANDARD IN *HAMDAN* ..……..……..7

III.    MINIMUM STANDARDS OF DUE PROCESS IN DOMESTIC AND
        INTERNATIONAL LAW DEMAND MORE PROTECTIONS THAN
        THOSE OFFERED BY THE CSRTS  ……..…………………………………..11

        A.      The CSRT Procedures Do Not Conform With Accepted Due
                Process Standard Set Out In *Hamdan*, Requiring Notice Of The
                Factual Basis For A Decision And A Fair Opportunity To Rebut
                the Government's Factual Assertions Before A Neutral Decision
                Maker   ……………………………………..………………..……...11

        B.      The CSRT Process Does Not Comport With Minimum Standards
                Of The Geneva Conventions And The Uniform Code Of Military
                Justice………………………………………………………………..…14

IV.     THE DTA'S HABEAS-STRIPPING PROVISIONS VIOLATE THE
        CONSTITUTION'S SUSPENSION CLAUSE BECAUSE THEY
        RESTRICT THE AVAILABILITY OF THE GREAT WRIT WITHOUT
        PROVIDING AN "ADEQUATE, EFFECTIVE, AND EQUIVALENT"
        FORM OF JUDICIAL REVIEW………………………………………...……17

A.      The Scope And Form Of Judicial Review Under The DTA Is
        Insufficient To Address The Underlying Fundamental Flaws
        Of The Tribunal Process Itself, A Question That Could Be
        Addressed Through Habeas………………………………………..…….19

B.      DTA Limits Access To The Courts To A Very Select Group
        Of Prisoners................................................................................................21

CONCLUSION…………………………………………………………………….....22

CERTIFICATION FOR THE FILING OF AN AMICUS BRIEF

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

### STATEMENT OF INTEREST OF AMICUS CURIAE/ASSIGNED COUNSEL

The World Organization for Human Rights USA (hereinafter Human Rights USA) is a non-profit, public interest human rights organization dedicated to enforcing compliance with human rights standards in the United States. We are the U.S. affiliate of a worldwide network (L'Organisation Mondiale Contre La Torture (OMCT), or the World Organization Against Torture international), made up of over 200 similarly situated human rights organizations, each focusing on their own nation's human rights compliance issues and needs. Human Rights USA has been extensively involved in litigation in the immigration courts and the federal courts aimed at protecting refugees and victims of torture from being returned to situations of persecution and abuse in their home countries through the application of international and domestic legal standards prohibiting such returns. We also have been heavily involved in cases challenging the practice of "rendition to torture," or the "extraordinary rendition" of suspected terrorists to foreign countries for interrogation purposes, and the use of the "unlawful enemy combatant" designation as a basis for prosecuting those suspected of terrorism before military tribunals.

For example, Human Rights USA served as *amicus* with the Federal District Court in Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Supreme Court, in a case involving a U.S. resident unlawfully detained as an enemy combatant in a South Carolina naval brig (*Al-Marri v. Bush*, 274 F. Supp. 2d 1003 (C.D. Ill. 2003), and *Al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004)).

In addition, Human Rights USA served as lead counsel and counsel of record in the case of Ahmed Abu Ali, an American citizen detained in Saudi Arabia for 20 months

due to a U.S. investigation prompted by the war against terrorism.  Human Rights USA filed a petition on behalf of his parents in the District Court for the District of Columbia in August of 2004, and received a favorable jurisdictional decision in the case from Judge John Bates on December 16, 2004 (350 F.Supp.2d 28) that was the subject of an editorial in the *Washington Post* of December 20, 2005 in support of the decision, and that resulted in the Government returning Mr. Abu Ali to the United States.

Human Rights USA has also addressed issues similar to those raised in Mr. Feghoul's petition in the cases of *Al Odah v. The United States of America*, No. 05-5064, 05-5095 through 05-5116, and *Hamdan v. Rumsfeld*, 415 F.3d 33 (D.C. Cir. 2005), both in the United States Court of Appeals for the District of Columbia Circuit.  These cases concerned habeas petitions filed by Guantanamo Bay detainees challenging the validity of the Combatant Status Review Tribunals and Military Commissions, respectively, and the failure to meet recognized domestic and international legal standards in these processes.

As is true for the cases cited above, the present case raises a number of significant and very complex questions concerning the United States Government's adherence to international human rights standards, as well as to standards embodied in domestic law, in this case the Uniform Code of Military Justice and the military regulations and guidelines implementing the Geneva Conventions, as well as the Convention Against Torture and its implementation legislation.

It also raises significant legal issues concerning whether the provisions of the Detainee Treatment Act properly and constitutionally limit the authority of the courts to entertain habeas petitions from Guantanamo Bay detainees.  Human Rights USA has

become the leading group in the U.S. dealing with these "habeas-stripping" issues by becoming involved as counsel of record or as amicus in a number of key cases dealing with this issue affecting both refugees (under the REAL ID Act) and suspected terrorist detainees under the DTA.

Human Rights USA and its staff have had extensive experience dealing with these subject areas. We serve as the only international human rights organization in the U.S. focusing primarily on cases and issues relating to U.S. compliance with international human rights standards, and making extensive use of litigation in U.S. courts as the primary method for seeking remedies and for bringing public attention to areas of potential non-compliance. In addition, and unique to most international human rights organizations, the Executive Director of Human Rights USA served as a military lawyer with the Judge Advocate General Corps of the U.S. Navy Reserves from 1967-1969, and with a military police prisoner of war unit of the U.S. Army from 1963-1966, and consequently has had direct experience with the application of military law to cases and circumstances similar to the ones associated with this case, including the status and treatment of prisoners of war under the Geneva Conventions, and with the operation of the military justice system more generally.

As a result of these concrete experiences, Human Rights USA is in a unique position to offer this Court important information and legal analysis on how international law and international human rights standards, as well as domestic military law, apply to the present case. For these reasons, and most especially the need to properly serve the interests of justice and due process requirements, Human Rights USA respectfully requests that the Court grant this motion for leave to participate as *amicus curiae*, or if

the court so wishes to assign us as counsel to *pro se* Petitioner, based on the significance

of the legal issues presented, and the inherent difficulties of properly addressing them on

a *pro se* basis given the unique and highly restrictive nature of the Petitioner's conditions

of detention at Guantanamo Bay, and further requests that the Court grant Human Rights

USA leave to file the accompanying brief in support of the Petitioner in this case on an

extension of time basis.

     The required Certification explaining the circumstances that justify our being

granted *amicus* status and permission to file a separate *amicus* brief accompanies this

Motion.

Respectfully submitted this 21st day of July, 2006 by:

_____/s/ Morton Sklar_____

Morton Sklar, Executive Director
 (D.C. Bar No. 144139)
Melissa Keyes, Legal Intern
Matthew Sadler, Legal Intern
WORLD ORGANIZATION FOR HUMAN RIGHTS USA
1725 K Street N.W., Suite 610
Washington, D.C. 20006
Tel: (202) 296-5702; Fax: (202) 296-5704

Case No. 06-CV-00618 (RWR)

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Asiana Airlines v. F.A.A.*, 134 F.3d 393 (D.C. Cir. 1998)………………………………..7

*Baeta v. Sonchik*, 273 F.3d 1261 (9th Cir. 2001)……………………………………………….5

*Bounds v. Smith*, 430 U.S. 817 (1977)…………………………………………………...21

*Bukala*, 854 F.2d 201 (7th Cir. 1988)…………………………………………………..6

*Burns v. Ohio*, 360 U.S. 252 (1959)…………………………………………………..21

*Burns v. Morton*, 134 F.3d 109 (3rd Cir. 1998)……………………………………………...5

*Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)…………………………12

*Cronauer v. United States*, 394 F.Supp.2d 93 (D.C.C. 2005)…...……………………….6

*Davis v. United States*, 417 U.S. 333 (1974)…………………………………………..18

*Dory v. Ryan*, 999 F.2d 679, (2nd Cir. 1993) ………………………………………….5

*Ex parte Hull*, 312 U.S. 546 (1941)…………………………………………………...21

*Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)…………………………………………….14

*Garvey v. Vaughn*, 993 F.2d 776 (11th Cir. 1993)…………………………………………5

*Greene v. United States*, 872 F.2d 236 (8th Cir. 1989)…………………………………..6

*\*Hamdan v. Rumsfeld*, 126 S.Ct. 2749 (2006)…………………..1, 2, 6 - 9, 11 - 18, 20, 21

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)……………….…..……………………....... 12

*Houston v. Lack*, 487 U.S. 266 (1988)….………………………………………….3-5

*Hill v. United States*, 368 U.S. 424 (1962)……………………………………………18

*In re Dorsainvil*, 119 F.3d 245 (3rd Cir. 1997)……………………………………………19

*John Does 1-570 v. Bush*, No. 05-CV-313 (March 12, 2005) …………………………7, 8

*Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123 (1951)……………………………12

*Lewis v. Richmond City Police Dept.*, 947 F.2d 733 (4th Cir. 1991)……………………..5

*Jones v. Bertrand*, 171 F.3d 499 (7th Cir. 1999)……………………………………5

*McNary v. Haitian Refugee Center, Inc.* 498 U.S. 479 (1997)…………………………..20

*Nichols v. Bowersox*, 172 F.3d 1068, 1073-77 (8th Cir. 1999)…………………………..5

*Richard v. Ray*, 290 F.3d 810 (6th Cir. 2002) …………………………………………5

*Smith v. Bennett*, 365 U.S. 708 (1961)………………………………………………...21

*Sonnier v. Johnson*, 161 F.3d 941, 945 n.2 (5th Cir. 1998)………………………………5

*Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998)……………………………………..5

*Swain v. Pressley*, 430 U.S. 372 (1977)……………………………………………...18, 19

*United States v. Anselmi*, 207 F.2d 312 (3d Cir.1953)…………………………………..18

*United States v. Hayman*, 342 U.S. 205 (1952)………………………….………………18

*United States. v. Moore*, 24 F.3d 624 (4th Cir.1994) …………………………………..5

## CONSTITUTION

Article I, §9, cl. 2……………………………………………………………………...22

## STATUTES AND REGULATIONS

*Detainee Treatment Act PL 109-148 2744 (2005)………..…………..……….....…*passim*

Antiterrorism and Effective Death Penalty Act ["AEDPA"], Pub. L.
No. 104-132, 110 Stat. 1214 § 4 (1996)……………….........................………... 5, 20

## TREATIES AND OTHER INTERNATIONAL INSTRUMENTS

Geneva Convention Relative to the treatment of Prisoners of War, Aug.
12, 1949, 6 U.S.T. 3316 (1952)……………………..……………………… 2, 11, 14 - 16

## TREATISES

Hertz, Randy and Liebman, James S., 1 FEDERAL HABEAS CORPUS
PRACTICE AND PROCEDURE § 5.2  (5th ed. 2005)……………………………………..5

Means, Brian R., FEDERAL HABEAS PRACTIONERS GUIDE §120

Case No. 06-CV-00618 (RWR)

8.20 (2005)…………………………………………………………………..……5

**MILITARY RULES AND REGULATIONS**

Army Regulation 190-8, *Enemy Prisoners of War, Retained Personnel,*
*Civilian Internees and Other Detainees* §1-5(a)(2), and (3) (1997)………………..……15

Secretary of the Navy, *Implementation of Combatant Status Review*
*Tribunal Procedures for Enemy Combatants Detained at Guantanamo*
*Bay Naval Base, Cuba*, July 29, 2004……………………………………………... 12

Secretary of Defense, *Application of Common Article 3 of the Geneva*
*Conventions to the Treatment of Detainees in the Department of Defense,*
July 7, 2006………………………………………………………………….… 14, 15

## SUMMARY OF ARGUMENT

This brief and the accompanying Motion are being submitted to bring the

attention of the Court to a number of extremely significant issues and concerns that are

relevant to the Court's disposition of this case, but that are not properly addressed in the

Government's Motion to Dismiss, and are unlikely to be properly understood or raised by

the *pro se* habeas Petitioner on his own behalf, including the impact on the case, and on

the Government's Motion to Dismiss, of the U.S. Supreme Court's recent decision in the

case of *Hamdan v. Rumsfeld*, 126 S.Ct. 2749 (2006). The Petitioner's inability to raise

these important issues and to properly and fairly represent his case is heightened

considerably by the tightly controlled nature of his detention in Guantanamo Bay that

leaves him with extremely limited access to legal materials, to legal assistance, to access

to the Court's process, or even to information concerning legal developments that are

highly relevant to his case, such as the *Hamdan* decision. The accompanying Motion

explains the need for permitting us to raise these issues on the Petitioner's behalf.

It is our position that the Government's Motion to Dismiss is without legal

support, that it takes a position that is inconsistent with the standards set out by the

Detainee Treatment Act, and with the Supreme Court's decision in the *Hamdan* case

applying and interpreting that Act, and that the Motion to Dismiss should be rejected by

the Court on that basis so that the merits of the Petitioner's claim can be heard.

Specifically, the Petitioner's claim of unlawful and unconstitutional detention,

and of the illegality and unconstitutionality of the determinations made by the Combatant

Status Review Tribunal, was submitted prior to the passage of the DTA, though not filed

until after DTA became law due to the Government's delays and negligence. The

1    Petitioner's claims also may well be covered by the general, pre-DTA habeas petition

2    filed on behalf of the Guantanamo Bay detainees before the habeas restrictions of the

3    DTA took effect.  Even if the Petitioner's claim is considered to be a post-DTA

4    submission, or otherwise covered by the DTA's habeas-stripping provisions, it may also

5    be covered by the findings made by the U.S. Supreme Court in the *Hamdan* case that

6    place into question the lawfulness of many of the military procedures that have been

7    applied to Guantanamo Bay detainees, including perhaps the CSRT process, because they

8    do not conform to basic due process standards mandated by the Supreme Court's in its

9    *Rasul* and *Hamdan* decisions, or to the requirements and standards of the Geneva

10    Conventions and the Uniform Code of Military Justice, which the Supreme Court now

11    has held to be applicable to the detainees.  Moreover, if the habeas-stripping provisions of

12    the DTA are deemed to apply to the Petitioner, grave Constitutional questions are raised

13    and must be addressed as to whether these provisions are lawful in that, if they are

14    permitted to be applied to the present case they would eliminate or restrict the availability

15    of habeas corpus remedies without providing the type of "adequate, effective, and

16    equivalent" form of judicial review that the Supreme Court mandates in order to avoid

17    Suspension Clause problems.

18    **ARGUMENT**

19    **I.**    **THIS PETITION SHOULD NOT BE DISMISSED OR TRANSFERRED**
20    **BASED ON THE HABEAS-STRIPPING PROVISIONS OF THE**
21    **DETAINEE TREATMENT ACT BECAUSE IT WAS SUBMITTED ONE**
22    **AND ONE-HALF MONTHS PRIOR TO THE PASSAGE OF THE DTA,**
23    **THOUGH THE GOVERNMENT DID NOT TRANSMIT IT TO THE**
24    **COURT UNTIL AFTER THE ACT BECAME LAW.**
25
26    The Government's attempt to apply the Detainee Treatment Act's habeas-

27    stripping provisions to Mr. Feghoul's habeas petition and to request the dismissal or

1    transfer of the case to the Federal Court of Appeals for the District of Columbia Circuit

2    on that basis must be rejected because the Petitioner submitted his petition well before the

3    DTA became law.  It was only because of the inordinate and inexcusable refusal or

4    inability of the Government to transmit the petition to the Court in a timely fashion that

5    the petition was not filed with the Court more promptly, and prior to the DTA becoming

6    law.  No justification has been provided as to why these legal documents were not

7    promptly filed with the Court as required at that point.  But under no account should the

8    Government's inordinate and inexcusable delay in transmitting these papers to the Court

9    be permitted to serve as the basis for denying the Petitioner the right he had at that point

10    to file a habeas corpus petition.

11        Petitioner's habeas claim must be considered constructively filed on the day that

12    the letter was handed to Guantanamo Bay authorities for mailing consistent with Supreme

13    Court jurisprudence.  Petitioner submitted his petition well before the passage of the

14    DTA, which took place on December 30, 2005, and had every reason to expect that his

15    petition would reach the Court in a reasonable amount of time.  There exists no issue of

16    fact surrounding the date Petitioner's filing was placed in the Government's hands.

17    Guantanamo Prison officials noted the "mail date" for the habeas filing as November 16,

18    2005, and the translation date as November 29, 2005, more than a month before the DTA

19    become law.

20        As a *pro se* Petitioner in the custody of the government under the especially

21    restrictive conditions of Guantanamo Bay, Mr. Feghoul faces obstacles reminiscent of

22    those faced by the Petitioner in the Supreme Court case *Houston v. Lack*, 487 U.S. 266,

23    271, (1988).  The Supreme Court in that case recognized that a prisoner filing *pro se* is

3

1    confronted with unique barriers that restrict or hinder proper filing and notice.  In most

2    civil actions a Petitioner, when filing an appeal or serving notice, can place their

3    documents in the mail and nothing precludes the Petitioner from monitoring the delivery,

4    or from hand delivering the filings to the Court clerk if need be.  *Id.*  Mr. Feghoul, in

5    contrast, can not go to the clerk to hand deliver the filing.  In fact, he does not even have

6    access to the postal service directly, but must rely on military authorities, who act as his

7    custodians and have control over the court papers he prepares, to transmit his documents.

8    Mr. Feghoul's mail is subjected to at least a double layer of "bureaucracy," the United

9    States Armed Services and the United States Postal Service, placing the Petitioner and his

10   court filing under the total control of the Government.  See *id.*  (*Pro se* prisoners in

11   detention are forced to "entrust [their] appeals to the vagaries of the mail.").  His "control

12   over the processing of his notice necessarily ceases as soon as he hands it over to the only

13   public officials to whom he has access-the prison authorities."  *Id.*  The less severe

14   circumstances of the *pro se* Petitioner in *Houston* led the Court to find the filing date

15   would be recognized "at the time of delivery to the prison authority."  *Id.* at 272.  The

16   same finding of a "constructive filing date" as of the date of delivery to the Government

17   should be applied here, especially in view of the inordinate delay of 20 weeks that took

18   place before the Government submitted the petition to the Court.  See, also, *McNeil v.*

19   *U.S.*, 508 U.S. 106 (1993) (reaffirming that unique circumstances of incarceration might

20   require procedural rules to give way to fairness concerns).

21         The mailbox rule has since been codified as applicable to habeas petitions filed

22   under 28 U.S.C. §§2254 and 2255 by Rule 3(d) Governing 2254 and 2255 Cases.  See,

23   also, F.R.A.P. 25(a)(2)(C) (language of this rule mirrors the language of Rule 3(d)).

1    Moreover, application of the mailbox rule has been applied at the Federal and state level

2    in a number of contexts and is the norm in *pro se* prison filing. See Hertz, Randy and

3    Liebman, James S., 1 Federal Habeas Corpus Practice and Procedure § 5.2(b)(i) n.27

4    (5th ed. 2005); Means, Brian R., Federal Habeas Practitioner Guide §120 8.20  (2005).

5            U.S. Courts of Appeals have adopted and extended the *Houston v. Lack* "mailbox

6    rule" to other *pro se* filings including administrative claims under FTCA, §1983 claims,

7    AEDPA[1] appeals, and more general habeas petitions.  The 5th Circuit in *Sonnier v.*

8    *Johnson*, 161 F.3d 941, 945 n.2 (5th Cir. 1998), specifically noted that, consistent with

9    the Supreme Court's ruling *Houston v. Lack*, a prisoner's habeas petition is filed when it

10   is delivered to the prison authorities for mailing. The 8th Circuit sitting *en banc* adopted a

11   similar reading of *Houston* in *Nichols v. Bowersox*, 172 F.3d 1068, 1073-77 (8th Cir.

12   1999) when the Court also applied the "mailbox rule" to a *pro se* prisoner's habeas corpus

13   petition.  See *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (*pro se* habeas filed

14   under AEDPA); *Jones v. Bertrand*, 171 F.3d 499 (7th Cir. 1999) (*pro se* habeas petition);

15   *Burns v. Morton*, 134 F.3d 109 (3rd Cir. 1998) (*pro se* habeas pursuant to AEDPA).[2]

16          The 9th Circuit concluded in an I.N.S. detention case that the constructive filing

17   date for a detainee should be recognized as being the day Petitioner gave the petition to

18   the detention center's authorities for mailing.  *Baeta v. Sonchik*, 273 F.3d 1261 (9th Cir.

---

[1] Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[2] *Richard v. Ray*, 290 F.3d 810 (6th Cir. 2002) (*pro se* prisoner medical malpractice suit); *U.S. v. Moore*, 24 F.3d 624 (4th Cir.1994) (despite representation by counsel, mail box rule applied to prisoner filed notice of appeal of criminal conviction); *Garvey v. Vaughn*, 993 F.2d 776 (11th Cir. 1993) (prison "mailbox rule" applied to FTCA, §1983, and Bivens claims); *Dory v. Ryan*, 999 F.2d 679, (2nd Cir. 1993) (*pro se* §1983 claim); *Lewis v. Richmond City Police Dept.*, 947 F.2d 733 (4th Cir. 1991) (*pro se* §1983 complaint)

1    2001).  This Court has applied a similar standard to court submissions and service of

2    process requirements, finding them "constructively received" if the receiving authority

3    acted negligently in failing to properly forward it to the correct agency of the same

4    government.  *Cronauer v. United States*, 394 F.Supp.2d 93 (D.C.C. 2005) citing *Greene*

5    *v. United States*, 872 F.2d 236, 237 (8th Cir. 1989); See, also, *Bukala v. U.S.*, 854 F.2d

6    201 (7th Cir. 1988) (Claim not received until over one year after the claim was filed was

7    excused because the receiving agency failed to promptly transfer the claim).

8         Based on these case precedents, the inordinate delay in submitting the petition to

9    the Court amounts to negligence that can not be relied upon by the Government as a basis

10   for now claiming that the Court has no jurisdiction over the case. The constructive date of

11   receipt must be taken to be the date the petition entered the hands of prison officials.

12        A finding that Mr. Feghoul's habeas petition was constructively filed pre-DTA

13   precludes the retroactive application of DTA.  The Supreme Court in *Hamdan v.*

14   *Rumsfeld*, 126 S.Ct. 2749, 2770 n.15 (2006), made clear that district courts retain

15   jurisdiction over habeas petitions pending before the DTA was enacted when it explicitly

16   stated "we conclude that § 1005(e)(1) does not strip federal courts' jurisdiction over cases

17   pending on the date of the DTA's enactment."  U.S. Attorney General Alberto Gonzalez

18   acknowledged that pursuant to the *Hamdan* decision habeas cases filed prior to the

19   enactment of DTA were not covered by its requirements when he testified before the

20   Justice Department Oversight Hearing of the Senate Judiciary Committee held July 18,

21   2006.  In his prepared remarks to the Committee Attorney General Gonzales asked

22   Congress to amend the DTA to specifically remove the Court's jurisdiction over the

23   "hundreds of lawsuits from Guantanamo detainees" now active in the Courts.

1    Specifically he asked Congress to "confirm that it intended these provisions for limited

2    and appropriate judicial review to apply to all of the existing Guantanamo detainee

3    lawsuits," since pursuant to the Supreme Court's ruling in *Hamdan* the DTA currently

4    does not apply to pending cases.

5           The Government may argue that the provisions of the DTA that refer to

6    challenges of the CSRT decisions (§1005 (e)(2)(C)(i)) includes more specific language

7    not present in the provision removing habeas jurisdiction more generally (§1005 (e)(1))

8    that authorize retroactive application.  But §§1005(e)(2)(B)(ii), and (e)(2)(C)(i) permit

9    retroactive effect only with respect to "review of decisions of combatant status review

10   tribunals," with a very limited scope of review being provided for, whereas the

11   Petitioner's habeas claim deals with much broader, underlying questions as to the

12   adequacy, legality and constitutionality of the CSRT process and procedures more

13   generally, and is not limited to a review of the CSRT's decision itself.  Mr. Feghoul has

14   filed an objection to the tribunal process as a whole and to his lack of access to counsel

15   pre-DTA, similar to the concerns raised in the *Hamdan* case.  Therefore it is properly

16   before this Court.  Rules of statutory construction dictate that a court must "construe a

17   statute so that no provision is rendered inoperative or superfluous, void or insignificant."

18   *Asiana Airlines v. F.A.A.*, 134 F.3d 393, 398 (D.C. Cir. 1998).  The DTA is clear in its

19   language, and adopting a broad reading of §1005(e)(2)(C)(i) would make §1005(e)(1)

20   inoperative or superfluous.

21   **II.    THE COVERAGE OF PETITIONER'S HABEAS CLAIMS  BY THE**
22   **GENERAL PETITION FILED ON BEHALF OF GUANTANAMO BAY**
23   **DETAINEES IN JOHN DOES 1-570 v. BUSH, IS ANOTHER REASON**
24   **WHY THE PETITIONER'S CASE SHOULD BE CONSIDERED A PRE-**
25   **DTA PROCEEDING NOT SUBJECT TO DISMISSAL OR TRANSFER**

1    **UNDER THE DTA, BASED ON THE SUPREME COURT'S NON-**
2    **RETROACTIVITY STANDARD IN *HAMDAN*.**
3
4    There is another reason for treating the Petitioner's submission as pre-dating the

5    passage of DTA.  Petitioner's claims of unconstitutional and unlawful detention, and of

6    the illegality and unconstitutionality of the determinations made by the Combatant Status

7    Review Tribunal are explicitly covered by the general habeas petition filed by the Center

8    for Constitutional Rights on behalf of 570 detainees then held incommunicado at

9    Guantanamo Bay, Cuba on February 10, 2005 with the United States District Court for

10   the District of Columbia.  *John Does 1-570 v. Bush* No. 05-cv-00318 (CKK).  Based on

11   this coverage, applying the habeas restriction and transfer provisions of DTA to the

12   present petition would involve the type of retroactive application of the DTA the

13   Supreme Court held in *Hamdan* to be inappropriate and not intended by Congress.  *See*

14   *Hamdan*, 126 S.Ct. at 2768-70.  The concerns raised by the Petitioner in his present

15   submission reflects and provides individual application to the allegations made by a

16   number of the unrepresented Guantanamo detainees in the general "Doe Petition" filed

17   before the DTA became law.

18       The "Doe Petition" was filed to bring to the Court's attention the circumstances of

19   the then unknown and unrepresented prisoners who were and continue to be held under

20   the power and authority of the Government.  The petition was written to include "every

21   detainee being held at Guantánamo… who has not yet filed a petition for a writ of habeas

22   corpus."  This clearly covers the Petitioner.   The mechanism of the "Doe petition"

23   provided that at such time that Counsel learned the name of any "Doe" the wishes of that

24   individual would be properly ascertained and the proper course of action taken.  In this

25   instance counsel learned of Petitioner Feghoul's name when his petition arrived before

1    this Court, and the required affirmation that he seeks to move forward in challenging his

2    unlawful detention has now been made through the filing of his own individual habeas

3    petition.  It was contemplated in the "Doe Petition" process that there can be no denying

4    the right of an individual to file a habeas claim on his own behalf to address the specific

5    harms he has suffered.

6        The "Doe Petition" was filed before the passage of the Detainee Treatment Act,

7    and covered all detainees in Guantanamo who had not yet been able to file a petition on

8    their own behalf.  Petitioner Feghoul was present at Guantanamo when the "Doe

9    Petition" was filed, was one of those detainees who was unrepresented, and as such his

10   claims, now spelled out by him more directly, were covered in the "Doe Petition" and

11   therefore should be treated as having been pending before a court prior to the passage of

12   the DTA.  As the Supreme Court made clear in *Hamdan*, retroactive application of the

13   DTA is inappropriate and is not applicable to habeas claims pending before the Court

14   when DTA became law.  126 S.Ct. at 2768-70.  Even J. Scalia writing in dissent,

15   recognized the breadth of the *Hamdan* decision, "the Court today concludes that…*every*

16   "court, justice, or judge" before whom such a habeas application was pending on

17   December 30 has jurisdiction to hear, consider, and render judgment on it."  Hamdan,

18   126 S.Ct. 2810 (Scalia, J. dissenting opinion).  The Attorney General acknowledged this

19   fact as well in his testimony before the Senate Judiciary Committee on July 18, 2006 (see

20   *infra*).  The Government's Motion to Dismiss or Transfer based on applying the

21   provisions of the DTA should be denied on this basis because it seeks the type of

22   retroactive application that the Supreme Court has found to be improper and unintended

23   in these proceedings.

1

2    Chief Judge Hogan, recognizing the unique circumstances of the detainees at

3    Guantanamo Bay, ordered that the general "Doe Petition," using fictitious names, be

4    entered and considered by the Court.  See Order Granting Petitioner's Motion To Proceed

5    With A Petition For A Writ of Habeas Corpus Using Fictitious Names, p.2.  The case was

6    assigned to Judge Kollar-Kotelly, who ordered a stay pending the outcome of certain

7    appeals cases.  That ruling was entered April 23, 2005.  Through various delays and time

8    extension for both sides, the issue of temporarily using fictitious names was never

9    reached.  The last entry in that case was made on March 30, 2006, when the court re-

10   entered a stay pending the issuance of a decision from the Court of Appeals on

11   jurisdictional issues covered by the al-Odah and companion cases now pending before

12   that Court.

13        The Government's attempt to single out a *pro se* Petitioner from *Doe* is

14   inappropriate, and would have the effect of violating the stay ordered by Judge Kollar-

15   Kotelly in *Doe*.[3]  Further, it is not in the interests of justice to deny the right of an

16   individual detainee to file his own habeas petition specific to his claims, in place of a

17   general petition already entered.  At the very least, the Court should allow the substitution

18   of the Petitioner's own habeas claim for the more general "Doe Petition" filed previously

19   before the DTA was enacted, which covered similar claims of all unrepresented

20   detainees, so that his claims can be addressed on an individual basis as the "Doe Petition"

21   contemplated, and as he has now specifically requested through the filing of this petition.

---

[3] It was not until May 15, 2006 that the Government released the names of all past and present detainees at Guantanamo Bay Naval Base, making contact with individual detainees and their families extremely difficult before that time.

1  **III.    MINIMUM STANDARDS OF DUE PROCESS RECOGNIZED IN**
2  **DOMESTIC AND INTERNATIONAL LAW DEMAND MORE**
3  **PROTECTIONS THAN THOSE OFFERED IN THE CSRT PROCESS.**
4
5              The CSRT procedures that resulted in the "unlawful enemy combatant"

6  designation for the Petitioner and that were used to justify his continued arbitrary and

7  indefinite detention, do not meet lawful due process standards for such proceedings as set

8  out in the Geneva Conventions, and in the Uniform Code of Military Justice.  The U.S.

9  Supreme Court in the *Hamdan* case determined that these standards applied to

10  Guantanamo Bay detainees, which includes the Petitioner, with respect to the procedures

11  followed by the Military Tribunals.  126 S.Ct. at 2757.  They are equally applicable to the

12  CSRT process, which also involves determinations by military entities whose

13  determinations result in continued long-term, indefinite detention, a penalty equivalent to

14  and indistinguishable from sentences imposed by the type of Military Tribunals that were

15  the subject of the *Hamdan* decision.  These standards were not properly observed in this

16  case, resulting in the arbitrary and unlawful detention of the Petitioner, and the denial of a

17  number of his basic rights.

18          **A.    The CSRT Procedures Do Not Conform With Accepted Due Process**
19                **Standard Set Out In *Hamdan*, Requiring Notice Of The Factual Basis**
20                **For A Decision And A Fair Opportunity To Rebut the Government's**
21                **Factual Assertions Before A Neutral Decision Maker.**
22
23              Due process standards have protected the integrity and fairness of tribunals and

24  hearings for more than two centuries, and in that time no area has been awarded more

25  procedural protections than hearings that threaten the liberty interest of the individual.

26  Detainees being judged by the CSRT process are placed in jeopardy of continued

27  deprivation of liberty, and punishments of this magnitude must be "preceded by notice

28  and opportunity for [a] hearing" that appreciates the severity of the issues presented.  See

11

1    *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 542 (1985).  For many detainees the

2    CSRT is the only tribunal they will face, and its outcome will determine whether they

3    will be held in captivity on a long term, indefinite basis, or freed.

4        Some of the due process concerns raised by the CSRT procedures were referred to

5    in the Supreme Court's decision in *Hamdi*, decided before CSRT procedures were

6    adopted, where the Court held that the process for designating detainees as "unlawful

7    enemy combatants" failed basic due process standards, in particular the failure to permit a

8    factual basis for making the designation, and a fair opportunity to rebut the Government's

9    evidence before a neutral decision maker.  542 U.S. at 533.  The CSRT implementation

10   procedures (hereafter CSRTP) issued by the Secretary of the Navy in the wake of *Hamdi*

11   do not adequately address these problems.  Secretary of the Navy, *Implementation of*

12   *Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at*

13   *Guantanamo Bay Naval Base, Cuba,* July 29, 2004 (hereafter *Implementation Memo).*

14   See, also, *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter,

15   J., concurring) ("the right to be heard before being condemned to suffer grievous loss of

16   any kind, even though it may not involve the stigma and hardships of a criminal

17   conviction, is a principle basic to our society.")

18       A CSRT judgment that continued confinement is necessary and that designation

19   as an unlawful enemy combatant is justified, produces a result and a punishment as

20   damning as a guilty judgment before a Military Tribunal, since it causes continued

21   indefinite detention.  This loss of liberty should be guarded from arbitrary or unfair

22   decisions through the CSRT process just as was done for the Military Tribunal process in

23   *Hamda* .  126 S.Ct. at 2798.  The Supreme Court in *Hamdan* noted that the procedures

1    adopted to try Mr. Hamdan deviated from those governing courts-martial in ways not

2    justified by any "'evident practical need.'"  *Id.*  The procedural deficiencies highlighted

3    in *Hamdan* are present in the CSRT process as well.  The CSRT process, in particular the

4    requirement set out in section G(7) of the CSRTP implementation procedures, allows

5    convictions of detainees on the basis of secret evidence and hearsay in the CSRT

6    hearings.  The Supreme Court found such use of evidence to be a major deficiency in the

7    Military Tribunal process in *Hamdan*, and a major violation of due process protections:

8           These rights are subject, however, to one glaring condition: The
9      accused and his civilian counsel may be excluded from, and precluded
10     from ever learning what evidence was presented during…they permit the
11     admission of *any* evidence that, in the opinion of the presiding officer,
12     "would have probative value to a reasonable person." Under this test, not
13     only is testimonial hearsay and evidence obtained through coercion fully
14     admissible, but neither live testimony nor witnesses' written statements
15     need be sworn. *Id. at 2786-87* (citations omitted).
16
17          Many of the fatal due process flaws of the military commissions that the Supreme

18   Court cited in *Hamdan* are equally present in the CSRT process, including exclusion of

19   detainees from portions of their own tribunals, the use of secret evidence, and the

20   inability to consult counsel.

21          Most troubling is that the CSRTs do not employ neutral decision makers.  We do

22   not claim improper conduct on behalf of the tribunal members.  But selecting individuals

23   who remain within the chain of command of the detaining agency and who are without

24   the proper training to weigh credibility and evidence to be responsible for the CSRT

25   review, raises serious problems of due process and independence.  As the Court in

26   *Hamdan* noted in a similar context:

27          We have no doubt that the various individuals assigned review
28     power … would strive to act impartially and ensure that Hamdan receive
29     all protections to which he is entitled. Nonetheless, these review bodies

1  clearly lack the structural insulation from military influence that
2  characterizes the Court of Appeals for the Armed Forces. 126 S.Ct. at
3  2771.
4
5  A similar argument can be directed at the Legal Advisor who serves as source of

6  guidance for the tribunal members and as the sole layer of review for CSRT pre-DTA.

7  CSRTP (C)(4) *Implementation Memo*.

8        The *Rasul* and *Hamdi* decisions understood the seriousness of designating an

9  individual as an unlawful enemy combatant, and the significant impact this designation

10  had on a detainee's status and treatment.  126 S.Ct. 2749; 542 U.S. 466.  The Supreme

11  Court in *Hamdan* extended these concerns by applying minimum due process

12  requirements to the Military Tribunal process.  A similar standard should be applied to

13  the CSRT procedures given the serious nature of the penalties that their adverse findings

14  impose. See, also, *Fuentes v. Shevin,* 407 U.S. 67, 80 (1972) ("For more than a century

15  the central meaning of procedural due process has been clear: 'Parties whose rights are to

16  be affected are entitled to be heard; and in order that they may enjoy that right they must

17  first be notified'").

18        **B.    The CSRT Process Does Not Comport With Minimum Standards Of**
19               **The Geneva Conventions And The Uniform Code Of Military Justice.**
20
21        As a decision-making body of the U.S. military that is responsible for making key

22  decisions relative to the status and incarceration of prisoners engaged in an armed

23  conflict with the United States, the CSRTs are obligated to conform to the standards set

24  out in the Geneva Conventions and in the Uniform Code of Military Justice.  This fact

25  was confirmed by the U.S. Supreme Court in its *Hamdan* decision with respect to the

26  Military Tribunals, as has since been acknowledged by the Department of Defense in its

27  July 11 Memorandum.  126 S.Ct. at 2757; Secretary of Defense, *Application of Common*

14

1    *Article 3 of the Geneva Conventions to the Treatment of Detainees in the Department of*

2    *Defense,* July 7, 2006.  The decisions of the CSRTs involve the imposition of very

3    serious penalties akin to criminal convictions.  They designate detainees as unlawful

4    enemy combatants and subject them to further indefinite incarceration without providing

5    the necessary procedural protections due to individuals captured in armed conflict.  The

6    law of war demands specific procedural protections be granted to detainees, protections

7    that can not be denied until a competent tribunal has conducted a hearing to determine the

8    detainees' appropriate status.  These rights are eliminated by a negative decision of the

9    CSRTs.

10         Geneva Convention III, Article 5 stipulates that the detaining authorities must

11   presume POW status applies until "such time as their status has been determined by a

12   competent tribunal."  6 U.S.T. 3316, 3320 (1952). This presumption in favor of POW

13   status pending formal assessment applies regardless of the type of battle being waged.

14   The United States Armed Forces recognized this standard in Army Regulation 190-8,

15   *Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees*

16   §1-5(a)(2), and (3) (1997):

17             All persons taken into custody by U.S. forces will be provided with
18          the protections of the GPW *until some other legal status is determined by*
19          *competent authority*. The punishment of EPW, CI and RP known to have,
20          or suspected of having, committed serious offenses will be administered
21          IAW due process of law and *under legally constituted authority per the*
22          *GPW, GC, the Uniform Code of Military Justice and the Manual for*
23          *Courts Martial.*(emphasis added).
24
25   See, also*, Hamdan,* 126 S.Ct. at 2796 *n. 63* citing U.S. Army Judge Advocate General's

26   Legal Center and School, Dept. of the Army, Law of War Handbook 144 (2004)

15

1    (Common Article 3 "serves as a 'minimum yardstick of protection in all conflicts, not

2    just internal armed conflicts'. ")

3            CSRTs are not authorized to address these concerns and are permitted to consider

4    only whether the detainee meets the criteria of an "enemy combatant" by a

5    preponderance of the evidence. [4]  The dilemma in part is created by the narrow mandate

6    of the CSRTs.  They are not authorized to examine any other issue.  The assumption by

7    the Government, until recently, was that a formal POW status determination was

8    unnecessary and inappropriate for those detained at Guantanamo Bay.  The Supreme

9    Court in *Hamdan* made clear that this approach was not in conformity with the United

10   States' domestic and international commitments.  See 126 S.Ct. 2749.

11           In sum, the procedural deficeinces of the CSRTs raise similar problems under the

12   UCMJ and the Geneva Conventions as did the Military Tribunals that were found to be

13   unlawful by the Supreme Court in *Hamdan*.  126 S.Ct. 2749. Common Article 3,

14   paragraph 1(d) of the Geneva Convention, now confirmed as applicable by the

15   Department of the Defense and by the Supreme Court in *Hamdan*, requires that the

16   "passing of sentences" be conducted pursuant to the judgments of "regularly constituted

17   court affording all the judicial guarantees which are recognized as indispensable by

18   civilized peoples." 126 S.Ct. at 2795. See 6 U.S.T. 3316, 3320 (1952).  This standard has

19   not been followed in the CSRT process.

---

[4] An enemy combatant is "an individual who was part of or supporting Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

1  **IV.   THE DTA'S HABEAS-STRIPPING PROVISIONS VIOLATE THE**
2        **CONSTITUTION'S SUSPENSION CLAUSE BECAUSE THEY RESTRICT**
3        **THE AVAILABILITY OF THE GREAT WRIT WITHOUT PROVIDING**
4        **AN "ADEQUATE, EFFECTIVE, AND EQUIVALENT" ALTERNATIVE**
5        **FORM OF JUDICIAL REVIEW.**
6
7        If prior arguments are rejected, and the Court still believes that there may be a

8  basis for accepting the Government's Motion to Dismiss or Transfer this case based on

9  the DTA, it then becomes necessary for the Court to consider the underlying question of

10  whether the habeas-stripping provisions of the DTA violate the Suspension Clause of the

11  Constitution in that they do not provide for the type of "adequate, effective, and

12  equivalent" form of judicial review that the Supreme Court mandates in these

13  circumstances.  It is our belief that there is strong basis (as set out below) for concluding

14  that the "adequate, effective, and equivalent" test is not met by the alternative form of

15  judicial review provided for in the DTA covering CSRT and Military tribunal decisions.

16  However, we urge the Court not to broach these significant and complex issues in the

17  context of a *pro se* habeas petition where the Petitioner, given the unusual and highly

18  restrictive nature of his incarceration in Guantanamo Bay is hardly in a position to deal

19  properly or effectively with these matters.  Rather, we believe it is more appropriate to

20  apply the principle of "constitutional avoidance," and reject the Government's claims on

21  the more direct and more easily applied basis resting on the inapplicability of the DTA

22  provisions to this case, as outlined in previous sections of this brief.

23        However, if the Court does not find these procedural and statutory interpretation

24  approaches dispositive, and the Petitioner's claims are viewed by the Court as subject to

25  the habeas-stripping provisions of the DTA, and falls outside of the Supreme Court's

26  *Hamdan* decision that habeas petitions pending at the time of DTA are not subject to the

1    DTA restrictions, the Court must consider the broader question as to whether the

2    requirements of the DTA can lawfully and constitutionally be applied even on a

3    prospective basis given the highly restrictive nature of the alternative form of judicial

4    review that DTA establishes in place of habeas. 126 S.Ct. at 2768-70.

5         The Supreme Court has made clear that the Suspension Clause prohibits the

6    placement of restrictions on the availability of habeas corpus unless an "adequate,

7    effective, and equivalent" alternative form of judicial review is provided that offers a

8    reasonable means "to test the legality of his detention." *Hill v. United States*, 368 U.S.

9    424, 427 (1962). See *Swain*, 430 U.S. 372 (1977); *U.S. v. Hayman*, 342 U.S. 205, 223

10   (1952). The Supreme Court demands that the alternative form of judicial review be the

11   "exact equivalent" or "virtually identical" to the old, a test is not met by the DTA. *Swain*,

12   430 U.S. at 381-82; *United States v. Anselmi*, 207 F.2d 312, 314 (3d Cir.1953).  As

13   Justice Kennedy pointed out in *Hamdan*,

14        It is no answer that, at the end of the day, the Detainee Treatment Act
15        of 2005 (DTA) affords . . . defendants the opportunity for judicial
16        review in federal court.  As the Court is correct to observe, the scope of
17        that review is limited, and the review is not automatic . . . .  Also,
18        provisions for review of legal issues after trial cannot correct for
19        structural defects . . . that can cast doubt on the factfinding process and
20        the presiding judge's exercise of discretion during trial.  126 S.Ct. at
21        2807 (Kennedy, J. concurring)[5].
22
23   See, also, *Davis v. U.S.*, 417 U.S. 333, 343 (emphasis added) (Court upheld a change to

24   habeas jurisdiction because "history makes clear that § 2255 was … *identical* in scope to

25   federal habeas corpus."); *Hayman*, 342 U.S. at 219 (stressed that Congress in enacting 28

26   U.S.C. §2255 intended solely "to minimize the difficulties encountered in habeas

---

[5] Justice Kennedy was speaking, in this case, of the deficiencies of the federal court judicial review provided by Section 1005(e)(3)(D) with respect to bridging the divide between military commissions and courts-martial.  However, the same deficiencies affect the issue of whether such federal court review provides an adequate alternative to habeas review.

18

1  hearings by affording the same right in another and more convenient forum."); *In re*

2  *Dorsainvil*, 119 F.3d 245 (3rd Cir. 1997) (emphasis added) (Swain found adequacy of the

3  new provision … *virtually identical* to habeas under 28 U.S.C. § 2255).

4       The Government incorrectly asserts in Mr. Feghoul's case that the DTA provides

5  an adequate equivalent to habeas corpus.  In fact, the alternative procedures for review set

6  out in the DTA fall far short of meeting the "adequate, effective and equivalent" standard.

7  It is not until footnote four on page six of their Motion to Dismiss that the Government

8  acknowledges that claims brought under the DTA deviate significantly from habeas

9  protections available prior to DTA.  Specifically, the DTA's appeals procedure with the

10  Federal Court of Appeals for the D.C. Circuit fall far short of a normal habeas review in

11  the scope and form of judicial review provided, and in the classes of detainees that have

12  access to the appeals process.

13  **A.  The Scope And Form Of Judicial Review Under The DTA Is**
14  **Insufficient To Address The Underlying Fundamental Flaws Of The**
15  **Tribunal Process Itself, A Question That Could Be Addressed**
16  **Through Habeas.**

17       The text of DTA §1005(e)(2)(C)(i) and (ii) limits the scope of review to whether

18  or not CSRT or Military Tribunal proceedings conform to the procedures established for

19  the operation of those bodies.[6]  More fundamental underlying issues associated with the

20  legitimacy and Constitutionality of the procedures themselves are not subject to review,

21  nor are any issues associated with matters outside of the functions of these bodies,

---

[6] (i) whether the status determination of the Combatant Status Review Tribunal with regard to such alien was consistent with the standards and procedures specified by the Secretary of Defense for Combatant Status Review Tribunals (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence and allowing a rebuttable presumption in favor of the Government's evidence); and

(ii) to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States.

1    including the legitimacy of detentions, or conditions of confinement.  Habeas has served,

2    in the "war on terror" context, as a vehicle to challenge CSRTs and Military Tribunals as

3    illegal proceedings.  Restrictions of the sort DTA seeks to impose would have made the

4    consideration and vindication of the due process objections in the habeas petitions of

5    *Hamdi*, *Rasul*, and *Hamdan* impossible.  DTA's severe limitation on the scope of review

6    creates the danger of leaving petitioners languishing in illegal detention, without any

7    means to challenge their treatment.

8         Section 1005(e)(2)(C) opens up a very small, and in the end insufficient, window

9    for review of questions of fact.  This limited review merely permits the Court of Appeals

10   to review the CSRT's reasoning with respect to the evidence presented.  It does not

11   provide the option for a *de novo* review of the facts such as would be accorded an

12   applicant for habeas review. Cf. AEDPA, Pub. L. No. 104-132 §4 (1996).  Without the

13   ability to review questions of fact and law on a de novo basis, the applicant for judicial

14   review under Section 1005(e)(2)(C) or (3)(C) is entirely unable to rebut evidence which

15   would never have been admissible in a federal district court hearing – e.g., hearsay

16   evidence and unsworn testimony – nor would he be able to assess the validity of the

17   "closed" evidence presented in his absence.

18        Moreover, simply transferring jurisdiction from the district courts to the U.S.

19   Court of Appeals has negative consequences, since courts at the appellate level lack the

20   fact-finding ability that the district courts normally exercise in their consideration of

21   habeas claims.   The Court in *McNary v. Haitian Refugee Center, Inc*, 498 U.S. 479, 497

22   (1997), concluded, "that restricting judicial review to the courts of appeals...is the

23   practical equivalent of a total denial of judicial review of generic statutory and

1   constitutional claims.'  See, also, *Id*.  (The "fact-finding and record developing

2   capabilities of a federal district court" allow for more thorough review of certain

3   questions of fact).

4   **B.      DTA Limits Access To The Courts To A Very Select Group Of**
5   **           Prisoners.**

6          Access to the Federal Court of Appeals under DTA is restricted to detainees who

7   have completed the CSRT or Military Tribunal processes and have received a final order

8   labeling them an enemy combatant, or imposing criminal penalties upon them that exceed

9   ten years.  Those without final orders, those sentenced to less than ten years

10  incarceration, and those not found to be enemy combatants, are barred from any review

11  of their claims, including issues associated with their detention and treatment.  If the

12  Government's argument were accepted the Petitioners in the *Hamdan*, *Rasul*, and *Hamdi*

13  cases, for example, could not have brought their claims under DTA, even though they

14  were found to have legitimate habeas claims by the U.S. Supreme Court.  Similarly, the

15  Uighurs detained at Guantanamo Bay for four years who later were found not to be

16  unlawful enemy combatants would be without legal recourse to challenge their detention

17  under DTA despite the Government's admission that the Uighurs are innocent of

18  wrongdoing.  In effect these provisions eliminate all access to the Court except for a very

19  limited and select group of prisoners.  That result is inconsistent with the "adequate,

20  effective, and equivalent" test for evaluating an alternative form of judicial review than

21  habeas.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977). See *Burns v. Ohio*, 360 U.S. 252,

22  257(1959); *Ex parte Hull*, 312 U.S. 546 (1941). See, also, *Smith v. Bennett*, 365 U.S. 708

23  (1961) (Prisoner access to the courts must be adequate, effective, and meaningful).

24  Further, the deprivation described in the DTA habeas-stripping provisions, by definition,

1  completely eliminates habeas jurisdiction for a major class of individuals, an action that

2  has never been Constitutional unless it is aligned with the requirements of the Suspension

3  Clause of the United States Constitution. *See* PL 109-148 2744 §1005(e)(2)(C)(ii).  See,

4  generally, Art I. §9, cl. 2*; Hamdi,* 542 U.S. 507.  It is not so here.

5         By providing only a limited scope of judicial review, and by limiting the

6  availability of this alternative to only a small percentage of detainees, DTA fails to

7  provide an adequate, effective, and equivalent substitute, and therefore unconstitutionally

8  suspends habeas in violation of Article I, §9 of the United States Constitution.


9                                   **CONCLUSION**


10        For all the reasons set out above, the Court should hold that DTA does not divest

11  jurisdiction to consider Petitioner Feghoul's habeas claims and should rule that the

12  Government's Motion To Dismiss Petition For Want Of Jurisdiction Or, In The

13  Alternate, To Transfer Petition To The United States Court of Appeals for the District of

14  Columbia Circuit be denied.


15  Respectfully submitted this 21st day of July, 2006 by:

16

17  _____/s/ Morton Sklar_____
18  Morton Sklar, Executive Director
19  (D.C. Bar No. 14439)
20  Melissa Keyes, Legal Intern (Univ. of California at Hastings School of Law)
21  Matthew Sadler, Legal Intern (Boston College Law School)
22  WORLD ORGANIZATION FOR HUMAN RIGHTS USA
23  1725 K Street, N.W. Suite 610
24  Washington, D.C. 20006
25  Telephone: (202) 296-5702
26  E-mail: msklar@humanrightsusa.org
27  Counsel for Amicus Curiae

## CERTIFICATION BY COUNSEL FOR THE FILING
## OF AN AMICUS CURIAE BRIEF

This is to certify, under penalty of perjury, that the World Organization for Human Rights USA, believes that the filing of a separate *amicus* brief was necessary in this case.  We believe that the accompanying brief will provide the Court with unique information, legal analysis and perspectives that are not likely to be provided the Petitioner or the Government.  As indicated in our accompanying Motion for Leave to File, and in the Interest of Amicus section of the accompanying brief, the World Organization for Human Rights USA provides a unique combination of direct experience and high qualifications in dealing with both international human rights cases and issues in U.S. courts, and the application of military law in circumstances similar to those presented by the present case. We do not know of any other international human rights group, or any group dealing with military law issues, or any other prospective parties that provides this unique combination of experience and qualifications.   Moreover, the number and complexity of the issues raised by this case, together with the inability of the pro se Petitioner to properly represent himself in this matter given the highly restrictive conditions of his detention, would make it very unlikely that these issues could be properly brought to the Court's attention in any other way.


Signed and certified to the 21st day of July 2006 in Washington, D.C. by:


  /s/ Morton Sklar_____
Morton Sklar
Executive Director
(D.C. Bar No. 14439)
WORLD ORGANIZATION FOR HUMAN RIGHTS USA
1725  K  Street, N.W.  Suite 610
Washington, D.C.  20006
Tele:  (202) 296-5702
Fax:  (202) 296-5704
E-Mail:  msklar@humanrightsusa.org

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULES

This is to certify, under penalty of perjury, that the accompanying Amicus Brief (or Assigned Counsel submission) comply in all respects to the best of our understanding with applicable requirements of the Federal Rules, including type and length limitations. This Brief consists of 22 pages of narrative text printed in Times Roman 12 Font, consisting of 6,385 words, and is accompanied by all relevant and required certifications and disclosure forms.

Signed and certified to this 21st day of July, 2006 by:


 /s/   Morton Sklar_____
Morton Sklar
Executive Director
World Organization for Human Rights USA
Tele:  (202) 296-5702

## CERTIFICATE OF SERVICE

This is to certify, under penalty of perjury, that a true and complete copy of this amicus curiae submission to the court in the above captioned case, including Motion for Leave to Submit and all accompanying certifications and forms, were served on counsel for both parties in this case by electronic means and by U.S. Postal Service first class mail as indicated below:

Pro Se Petitioner,

Abdulli Feghoul
Camp Delta; Guantanamo Bay Naval Base
Washington, D.C. 20355

Attorneys for Respondents,

Peter D. Keisler
Assistant Attorney General
Unites States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-2000

Douglas N. Letter
Terrorism Litigation Counsel
Unites States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-2000

Joseph H. Hunt (D.C. Bar No. 431134)
Unites States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-2000

Vincent M. Garvey (D.C. Bar No. 127191)
Unites States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-2000

Signed and Certified this 21st day of July, 2006 in Washington, D.C. by:


_____/s/ Morton Sklar_

Morton Sklar
Executive Director
(D.C. Bar No. 14439)
WORLD ORGANIZATION FOR HUMAN RIGHTS USA
1725 K Street, N.W. Suite 610
Washington, D.C. 20006
Tele: (202) 296-5702
Fax: (202) 296-5704
E-mail: msklar@humanrightsusa.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**ABDULLI FEGHOUL,**                           )
                                               )
                    *Petitioner,*              )
                                               )          **Petition for Habeas Corpus**
          **v.**                               )          **Case No. 06-CV-00618**
                                               )          **(RWR)**
                                               )
**GEORGE W. BUSH,** *et al.*                   )
          **President of the United States**   )
                                               )
                    *Respondents*              )
                                               )

---                                            )

**[PROPOSED] ORDER**

          Having considered Human Rights USA's motion to be assigned as Counsel for the Petitioner or, in the alternative, to be granted leave to appear as Amicus Curiae, and to file a brief on an extended time basis, it is hereby:

          ORDERED, that Morton Sklar of Human Rights USA be appointed as counsel for Petitioner Feghoul in the present habeas case No. 06-cv-00618; and it is further

          ORDERED, that Human Rights USA is GRANTED permission to file its brief on an extended time basis.

Dated this _____ day of _____, 2006

                              _____
                              Honorable Richard W. Roberts
                              United States District Judge