**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ :<br><br>**ABDULLI FEGHOUL,** :<br>Guantanamo Bay Naval Station, :<br>Guantanamo Bay, Cuba :<br> Petitioner :<br> :<br> V. :<br> :<br>**GEORGE W. BUSH** :<br> President of the United States :<br> The White House :<br> 1600 Pennsylvania Avenue, N.W. :<br> Washington, D.C. 20500; :<br> :<br>**DONALD RUMSFELD** :<br> Secretary, United States :<br> Department of Defense :<br> 1000 Defense Pentagon :<br> Washington, D.C. 20301; :<br> :<br>**NAVY REAR ADMIRAL HARRY B. HARRIS** :<br> Commander, Joint Task Force - GTMO :<br> JTF-GTMO :<br> APO AE 09360; and :<br> :<br>**ARMY COL. WADE F. DENNIS** :<br> Commander, Joint Detention :<br> Operations Group - JTF-GTMO :<br> APO AE 09360, :<br> :<br> Respondents :<br>_____ : | CIVIL ACTION<br>(HABEAS CORPUS)<br><br>No:    06-CV-00618<br><br>JUDGE RICHARD W. ROBERTS |

**AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner seeks relief under the Great Writ. Petitioner, who is believed to be a citizen of Algeria, filed a pro se request for habeas corpus relief with this Court dated November 16, 2005, which was docketed on April 3, 2006. This Court appointed undersigned counsel on August 7, 2006. Petitioner is a civilian wrongly classified as an "enemy combatant" by the President of the

United States, and is being held virtually incommunicado in military custody at the United States
Naval Station at Guantanamo Bay, Cuba ("Guantanamo Bay").  Petitioner is being detained
without lawful basis, without charge, without access to counsel and without being afforded any
fair process by which he might challenge his detention.  Petitioner is being held under color and
authority of the executive branch, and in violation of the Constitution, laws and treaties of the
United States, including the Geneva Conventions, as well as in violation of customary
international law and fundamental human rights.  Accordingly, this Court should issue a Writ of
Habeas Corpus compelling Respondents either to release Petitioner or to establish in this Court a
lawful basis for his detention.  This Court should also order injunctive and declaratory relief.

## I.  JURISDICTION

1.      Petitioner brings this action under 28 U.S.C. §§ 2241(a), (c)(1), (c)(3) and 2242.
Respondents are detaining Petitioner "under or by color of the authority of the United States" and
"in violation of the Constitution or laws or treaties of the United States."  *Id*. at § 2241(a)(1),
(a)(3).  Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651,
2201, and 2202; 5 U.S.C. § 701 *et seq*.; and Articles I and II of the Constitution of the United
States, and the Fifth, Sixth, and Eighth Amendments thereto.  Because he seeks declaratory
relief, Petitioner also relies on Fed. R. Civ. P. 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas
Corpus, and to entertain the Petition filed under 28 U.S.C. § 2242.  This Court is further
empowered to declare the rights and other legal relations of the parties herein under 28 U.S.C. §
2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28
U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and
also to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.  *See
Also Rasul v. Bush*, 542 U.S. 466 (2004); *Hamdan v. Rumsfeld*, ___ U.S. ___, 126 S.Ct. 2749
(2006).

2

## II. PARTIES

3.      Petitioner, Abdulli Feghoul, is presently incarcerated at Guantanamo Bay Naval Station, and held in Respondents' unlawful custody and control.  He is believed to be a citizen of Algeria.

4.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the armed forces of the United States.  Petitioner is being detained pursuant to President Bush's authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, entitled Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("Executive Order").  President Bush is responsible for Petitioner's unlawful detention and is sued in his official capacity.

5.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to either the Executive Order or the President's authority as Commander-in-Chief, and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining custody and control over Petitioner, and is responsible therefor.  He is sued in his official capacity.

6.      Respondent Navy Rear Admiral Harry B. Harris is the Commander of Joint Task Force-GTMO, the task force that has control of the detention operation at Guantanamo Bay.  He has supervisory responsibility for Petitioner and is sued in his official capacity.

7.      Respondent Army Colonel Wade V. Dennis is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner is presently held.  He is the immediate custodian responsible for Petitioner's detention and is sued in his official capacity.

8.      Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents'

3

authority or supervision has contracted for the provision of services at Guantanamo Bay.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees, or contractor employees.

### III.   STATEMENT OF FACTS[1]

#### A.   The Petitioner

9.      Petitioner is not, and never was an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the Government in any civil or military proceedings.  Petitioner is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 2639 (2004).

10.     Petitioner was present in Afghanistan, but did not take up arms against United States forces, and did not support forces hostile to or engaged in armed conflict with the United States.

11.     Petitioner seeks to enforce his rights to a judicial determination of the lawfulness of his detention.

12.     The United States has not shown that Petitioner was a member of the Taliban, of the armed forces of Afghanistan, or of Al Qaeda prior to his detention.  Nor has it shown that Petitioner committed any violent acts against any American person or property.  Furthermore, the United States has failed to show that Petitioner had any involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, in the ensuing armed conflict, or in any acts of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  Petitioner remains incarcerated at Guantanamo Bay Naval Station, a territory over which the United States exercises exclusive jurisdiction and control.

---

[1] All facts are set forth upon information and belief.

13.     Petitioner has not been afforded any procedures that satisfy his rights under the most fundamental common law notions of due process, the Constitution of the United States, the laws and treaties of the United States, or customary international law.  Indeed, he has not even been charged with any crime.  Yet, he remains incarcerated for years with no end in sight.

### B.    The Joint Resolution

14.     In the wake of the September 11, 2001, attacks, the United States, at the direction of President Bush, began a military campaign in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

15.     Petitioner is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

16.     Petitioner is not, and has never been, a member of Al Qaeda or any other terrorist group.  Prior to his detention, he did not commit or espouse any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  As he did not participate in the armed conflict at any point in time, he is not properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war, nor to the detention order issued by President Bush.

### C.    The Executive Order

17.     On November 13, 2001, President Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone President Bush has "reason to believe":

i.      is or was a member of the organization known as al Qaeda;

ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threatened to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

iii.     has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833 § 2 (Nov. 13, 2001). The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

18.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. The Executive Order contains no notification provision for informing a detainee of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor rights to notice of consular protection or to consular access at the detainee's request. It provides no recourse to a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order purports to expressly bar review by any court. *Id.* at § 6 (b) (2) ("the individual shall not be privileged to seek any remedy or maintain any proceeding . . . in any court of the United States, or any state thereof"). The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms which, since not reviewable by any court, may be based on false evidence, evidence obtained through torture, or even no evidence at all.

19.    The Executive Order was promulgated in the United States and in this judicial district. The decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district. The decision to detain Petitioner at Guantanamo Bay Naval Station

was made in the United States and in this judicial district.  The decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

20.    The United States has not shown that President Bush has certified or determined in any manner, in writing or otherwise, that Petitioner is subject to the Executive Order.

21.    The United States has not shown that Petitioner was, and is, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, or the laws and usages of war, in that Petitioner was denied the process due to him under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, as well as international law.

### D.   Guantanamo Bay Naval Station

22.    On or about January 11, 2002, the United States Military began transporting prisoners, some of whom were captured in or near Afghanistan, to Camp X-Ray at the Guantanamo Bay Naval Station.  In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at the Naval Station.  Currently, prisoners are housed in Camp Delta and Camp V, an additional maximum-security interrogation and detention center, as well as in Camps I, II, III and IV.

23.    Prisoners incarcerated at Guantanamo Bay Naval Station are entitled to test the legality of their detention in the federal courts.  *Rasul v. Bush*, 542 U.S. at 484 (2004) ("We therefore hold that 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base").[2]

---

[2]Former Guantanamo commanders have acknowledged that many of those held did nothing wrong.  *See* Mark Hubband, *U.S. Officer Predicts Guantanamo Releases*, Fin. Times (London), Oct. 4, 2004 (Brigadier General Martin Lucenti: "Most of these guys weren't fighting. They were running."); Christopher Cooper, *Detention Plan: In Guantanamo, Prisoners Languis in a Sea of Red Tape*, Wall. St. J., Jan. 26, 2005 (Brigadier General Jay Hood: "Sometimes, we just didn't get the right folks").  Certainly, they must be entitled to some redress.

24.    On a date unknown to counsel for Petitioner, but known to Respondents, the United States transferred Petitioner to Guantanamo Bay Naval Station, where he currently resides in the custody and control of Respondents.

### E.    The Conditions of Detention at Guantanamo Bay

25.    The United States Military has held Petitioner at Guantanamo Bay Naval Station virtually incommunicado.

26.    Upon information and belief, Petitioner has been interrogated and subjected to threats and "stress and duress" techniques such as sleep deprivation, forced sitting for hours and "environmental manipulation" including exposure to extreme heat or cold.  *See generally* Center for Constitutional Rights, *Report on Torture and Cruel, Inhuman, and Degrading Treatment of Prisoners at Guantanamo Bay, Cuba*, July, 2006.

27.    Upon information and belief, Petitioner has been or will be forced to provide involuntary statements to Respondents' agents at Guantanamo and has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges.  He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel.  He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees, or customary international law.  Indeed, Respondents have taken the position that detainees should not be informed of these rights.  As a result, Petitioner has been denied any ability to protect or to vindicate his rights under domestic and international law.

28.    Upon information and belief, the United States has held detainees at Guantanamo Bay under conditions that violate their constitutional and international rights to dignity and

freedom from torture, and from cruel, inhuman and degrading treatment or punishment.[3]

29.    Many of these violations—including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror—are actual interrogation techniques approved for use at Guantanamo Bay by the most senior Department of Defense lawyer.  *See* Action Memo from William J. Haynes II, General Counsel, Department of Defense, to Secretary of Defense (Nov. 27, 2002); Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations (Apr. 4, 2003).

30.    Approved interrogation techniques appear to have resulted in the death of detainees while in Respondents' custody in Iraq, and in other abuses at Bagram Air Force base. *See* Tim Golden, *In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths*, N.Y. TIMES, May 20, 2005; *Iraqi Died While Hung from Wrists*, ASSOC. PRESS, Feb. 17, 2005; *Papers Reveal Bagram Abuse*, THE GUARDIAN, Feb. 18, 2005.  Moreover, the difficult conditions of this long-term, open-ended confinement have also led to the recent suicide of three detainees and numerous other attempts at suicide at Guantanamo.  *See* Josh White, *Three Detainees Commit Suicide at Guantanamo*, THE WASHINGTON POST, June 11, 2006, at A1 ("Guards found the three men unresponsive and not breathing in their separate cells in Camp 1 ...").

31.    Some military lawyers have objected to and tried to stop the abusive interrogations at Guantanamo Bay.  *Military Lawyers Objected to Interrogation Methods at Guantanamo Sources Say*, N.Y. DAILY NEWS, Feb. 13, 2005 ("Judge Advocates—uniformed

---

[3] *See, e.g.*, Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 830-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch. 3 (2005); United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America Dignity Denied: Torture and Accountability in the "War on Terror"* at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantánamo Bay*, The Nat'l Assoc. Of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

legal advisers known as JAGs who were assigned to a secret war crimes task force—repeatedly objected to aggressive interrogations by a separate intelligence unit at Camp Delta, where Taliban and al-Qaida suspects have been jailed since January 2002.  The military lawyers' actions had never been disclosed and are the first known cases of lower-level officers resisting interrogations at the Cuban camp that might constitute torture.").

32.     Upon information and belief, Respondents contend that Petitioner should not be informed of his rights under the laws or Constitution of the United States, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, and the 1954 Convention Relating to the Status of Refugees or customary international law.  As a result, upon information and belief, Petitioner lacks awareness of his rights under domestic and international law.

33.     The International Committee of the Red Cross ("ICRC") has charged the United States Military with intentionally using psychological and physical coercion on prisoners at Guantanamo Bay during interrogations that was "tantamount to torture."  *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantanamo*, N.Y. TIMES, Nov. 30, 2004, at Al.  The report includes claims that doctors and other medical workers at Guantanamo Bay participated in planning for interrogations.  *Id.*; *see also* M. Gregg Bloche & Jonathan H. Marks, *When Doctors Go to War*, N.E. J. MED., Jan. 6, 2005, at 3-4.  Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantanamo Bay have appeared, including Federal Bureau of Investigation memos detailing torture and "highly aggressive interrogation techniques," including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music.[4]  The Associated Press has reported allegations that female interrogators at Guantanamo

---

[4]*See, e.g.,* Carol D. Leonnig, *Guantánamo Detainee Says Beating Injured Spine; Now in Wheelchair Egyptian-Born Teacher Objects to Plan to Send Him to Native Land*, Washington Post, Aug. 13, 2005, at A18; Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); *Guantánamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo*, New York Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Washington Post, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Memos Describe Abuses of Iraq Inmates*, New York Times, Dec. 21, 2004, at A1, Dan Eggen and R.

Bay have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. *Gitmo Soldier Details Sexual Tactics*, ASSOC. PRESS, Jan. 27, 2005; *see also* Eric Saar & Viveca Novak, INSIDE THE WIRE: A MILITARY INTELLIGENCE SOLDIER'S EYEWITNESS ACCOUNT OF LIFE AT GUANTANAMO (2005); Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 89-90, Ch. 12, AMR 51/063/2005 (13 May 2005).

34.     In fact, some of the well-publicized and egregious interrogation techniques used in the Abu Ghraib torture incidents – such as aggressive use of dogs, sexual humiliation, stress positions and sense deprivation – were pioneered at Guantánamo. *See* Josh White, *Abu Ghraib Dog Tactics Came From Guantánamo; Testimony Further Links Procedures at 2 Facilities*, Washington Post, July 27, 2005, at A14; and Josh White, *Abu Ghraib Tactics Were First Used at Guantánamo*, Washington Post, July 14, 2005 at A1.

35.     The unlawful and unconstitutional interrogation techniques used by Respondents at Guantanamo Bay include not only physical and psychological abuse, but also other impermissible conduct contrary to due process requirements, including having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees for the purpose of extracting information from the detainees. *See* Sam Hannel, *Lawyers Describe Guantanamo Detainees*, SEATTLE POST-INTELLIGENCER, Jan. 19, 2005. Moreover, military defense lawyers have been instructed to materially limit their representation disfavorably to their detainee clients in violation of due process. *See* David Johnston & Neil Lewis, "Lawyer Says Military Tried To Coerce Detainee's Plea," *NY Times,* June 16, 2005 at A25 (Late Ed.). *See generally* Eric Saar & Viveca Novak, *Inside the Wire: A Military Intelligence Soldier's Eyewitness Account of Life at Guantanamo* (2005).

36.     Respondents, acting individually or through their agents, have stated that

---

Jeffrey Smith, *FBI Agents Allege Abuse of Detainees of Guantánamo Bay*, Washington Post, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Critized Practices at Guantánamo*, New York Times, Dec. 7, 2004, at A19.

whatever limitations apply on coercive interrogation techniques used by United States Military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the Central Intelligence Agency or other entities controlled by President Bush. *See e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005). Eric Lichtblau, *Gonzales Says '02 Policy on Detainees Doesn't Bind CIA*, N.Y. TIMES, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Washington Post, Jan. 18, 2005, at A4.

37.    In published statements, President Bush and Secretary Rumsfeld, and previous commanders at Guantanamo, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.*, Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, *Extended Detention in Cuba Mulled*, Washington Post, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

38.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo Bay indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited August

9, 2006).

39.     Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detained prisoners, including Petitioner, under their current conditions indefinitely.  *See In re Guantanamo Detainee Cases*, Nos. 02-CV-0299 (CKK) *et al.*, (D.D.C.), Tr. of Dec. 1, 2004, Or. Argument on Mot. to Dismiss, at 22-24 (statements of Principle Deputy Assoc. Atty. Gen. Brian Boyle); *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Washington Post, Jan. 2, 2005, at Al.

### F.    Rendition

40.     During interrogations, detainees have also been threatened with "rendition" or transfer to countries that routinely practice torture.  Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by means of torture.  *See* Craig Whitlock, *New Swedish Documents Illuminate CIA Action: Probe Finds 'Rendition' Of Terror Suspects Illegal*, Washington Post, May 21, 2005, at A1; Jane Mayer, *Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program*, The New Yorker, Feb. 14, 2005, at 106.

41.     The United States' practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, The New York Times, Washington Post, the Los Angeles Times, and the British Broadcasting Corporation ("BBC").  According to news accounts,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics—including torture and threats to families—that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Washington

Post, Mar. 11, 2002, at Al; *see also* Dana Priest, *Long Term Plan Sought for Terror Suspects*, Washington Post, Jan. 2, 2005, at Al ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

42.     In fact, the U.S. Government has recently announced its intention to render many Guantánamo detainees to countries which have a poor record of respecting human rights and which engage in torture.[5] Moreover, upon belief and information, the Government is conditioning such rendering of detainees to their home countries on the requirement that the home country imprison the detainee, without regard to the detainee's individual factual or legal situation.[6]

43.     Moreover, the Washington Post reports that it has confirmed that prisoners are being held by the CIA in secret prisons in Eastern Europe, referred to as "black sites" in U.S. government documentation. In these facilities, which "were built and are maintained with congressionally appropriated funds," prisoners are "[k]ept in dark, sometimes underground cells, [and] have no legal rights, and no one outside the CIA is allowed to talk with or even see them." Diana Priest, *CIA Holds Terror Suspects in Secret Prisons*, Washington Post, November 2, 2005 at A01. The Post also reports that some of these secretly held individuals have been at Guantanamo Bay. *Id.*

44.     Petitioner is at risk of being rendered without lawful procedures to a country that

---

[5] *See e.g.,* Matthew Waxman, *Beyond Guantanamo*, Wash. Times Aug. 20, 2005, at A14; Robin Wright and Josh White, *U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments*, Wash. Times, August 9, 2005, at A13; Neil Lewis, *Guantanamo Detention Site Is Being Transformed, U.S. Says*, NY Times, August 6, 2005, at A8 (Late Ed.); Paul Richter, *U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay*, LA Times, Aug. 5, 2005 at A18.

[6] *See* Robin Wright and Josh White, *U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments*, Washington Post, August 9, 2005, at A13; BBC Worldwide Monitoring, "USA to release 107 Yemens from Guantanamo Bay," August 10, 2005 (available from LEXIS MWP90 file) ("The US authorities declared a few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.").

engages in torture during interrogations and incarceration.

## IV.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -
UNLAWFUL DEPRIVATION OF LIBERTY**

45.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully

herein.

46.    By the actions described above, Respondents, acting under color of law, have

violated and continue to violate common-law principles of due process as well as the Due

Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush

has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process

of law, and the remaining Respondents have implemented those orders.  Respondents' actions

deny Petitioner the process accorded to persons seized and detained by the armed forces of the

United States in times of armed conflict as established by, *inter alia*, the Uniform Code of

Military Justice ("UCMJ"), Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth

Geneva Conventions, and customary international law as reflected, expressed, and defined in

multilateral treaties and other international instruments, international and domestic judicial

decisions, and other authorities.

47.    To the extent that Petitioner's detention purports to be authorized by the

Executive Order, that Order violates the Fifth Amendment of the Constitution of the United

States on its face and as applied to Petitioner.

15

48.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES – UNLAWFUL CONDITIONS OF CONFINEMENT

49.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

50.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate Petitioner's right to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

51.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS

52.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

53.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner the process accorded to persons seized and detained by the armed forces of the United States in times of armed conflict, as established by specific provisions of the Third and Fourth Geneva Conventions.

54.    Violations of the Geneva Conventions are direct treaty violations, violate customary international law, and give rise to an enforceable claim by Petitioner under 28 U.S.C. § 2241 (c)(3).

55.    Respondents are liable for the conduct described above insofar as they set the

16

conditions at Guantanamo Bay Naval Station, and directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

56.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FOURTH CLAIM FOR RELIEF

### INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS

57.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

58.     By the actions described above, Respondents have denied and continue to deny Petitioner the process due to persons seized and detained by the armed forces of the United States in times of armed conflict as established by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

59.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FIFTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE - TORTURE

60.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

61.     On information and belief, Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon detainees in order to obtain coerced information or confessions from them, punish or intimidate them, or for other purposes. On information and belief, such abuses include, *inter alia*, that detainees have been placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no

17

privacy; shackled with heavy chains and irons; subjected to solitary confinement or the threat of solitary confinement for prolonged periods of time for minor rule infractions; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

62.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

63.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against detainees.

64.    On information and belief, Petitioner was and continues to be subject to the same physically and psychologically abusive conditions as other detainees, and is entitled to habeas corpus, declaratory, and injunctive relief and other relief as the Court may deem appropriate.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**ALIEN TORT STATUTE - WAR CRIMES**

65.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

66.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of detainees constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions, and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments,

18

international and domestic judicial decisions, and other authorities.

67.    As a result of Respondents' unlawful conduct, upon information and belief, detainees have been and are being forced to suffer severe physical and psychological abuse and agony.  Furthermore, upon information and belief, Petitioner was and continues to be subject to the same conditions as detainees, and therefore is entitled to habeas corpus, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE - CRUEL, INHUMAN OR DEGRADING TREATMENT

68.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

69.    Upon information and belief, the acts described herein intentionally and grossly humiliated and debased detainees, forced them to act against their respective wills and consciences, filled them with fear and anguish, and broke them physically and/or morally.

70.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of detainees.

72.    Upon information and belief, Petitioner was and continues to be subject to the same severe physical and psychological abuse and agony, and is entitled to habeas corpus, declaratory, and injunctive relief, as well as other relief to be determined at trial.

19

## EIGHTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE -
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION

73.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

74.    The acts described herein constitute arbitrary arrest and detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

76.    As a result of Respondents' unlawful conduct, detainees, upon information and belief, have been and are being deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Furthermore, Petitioner, upon information and belief, is subject to the same conditions, and is therefore entitled to habeas corpus, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

## NINTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE

77.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

20

78.     By the actions described above, Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

79.     As a result of Respondents' unlawful conduct, detainees have been and are being deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Petitioner is subject to the same conditions, and therefore is entitled to habeas corpus, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

<u>**TENTH CLAIM FOR RELIEF**</u>

**ARTICLE II OF THE UNITED STATES CONSTITUTION -
UNLAWFUL DETENTION**

80.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

81.     The United States has not shown that Petitioner is, or was, an enemy alien, a lawful or unlawful belligerent, or a combatant of any kind.  The executive branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 2642 n.l (2004).

82.     By the actions described above, President Bush has exceeded and continues to exceed the executive's authority under Article II of the Constitution of the United States by authorizing, ordering and directing that military officials seize detainees and transfer them to military detention, and by authorizing and ordering the continued military detention of detainees at Guantanamo Bay Naval Station.  All of the Respondents acted and continue to act without

21

lawful authority by directing, ordering, and/or supervising the seizure and military detention of detainees.

83.    President Bush's Executive Order authorizing the military seizure and detention of detainees by the Respondents is *ultra vires* and illegal in that it exceeds the executive's authority under Article II of the Constitution of the United States.  Accordingly, the Executive Order is void on its face, and as applied to Petitioner.

84.    To the extent that Respondents assert that their authority to detain Petitioner derives from a source other than the Executive Order, including, without limitation, the executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the United States Armed Forces, whether from Article II of the Constitution of the United States or otherwise, Respondents lack that authority as a matter of fact and law.

85.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

**ELEVENTH CLAIM FOR RELIEF**

**APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION**

86.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

87.    The UCMJ governs the detention of persons by the armed forces of the United States.  Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States.  *See* Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed").

88.    By arbitrarily and capriciously detaining Petitioner in military custody, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of Army Reg.

22

190-8 and other provisions of the UCMJ.

89.     Respondents' violation of Army Regulation 190-8 and the UCMJ gives rise to a cause of action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*.

90.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<h3 style="text-align:center">TWELFTH CLAIM FOR RELIEF</h3>

<h3 style="text-align:center">APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS</h3>

91.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

92.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner the process accorded to persons seized and detained by the United States Military in times of armed conflict as established by the UCMJ and Army Regulation 190-8, resulting in a violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*.

93.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court many deem appropriate.

<h3 style="text-align:center">THIRTEENTH CLAIM FOR RELIEF</h3>

<h3 style="text-align:center">APA - TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT</h3>

94.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

95.     By the actions described above, Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject detainees to torture and/or cruel, inhuman or degrading treatment in violation of the UCMJ and Army Regulation 190-8, thereby violating the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*.  Upon information and belief, Petitioner is subject to the same conditions.

96.     Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as

23

any other relief the Court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION - UNLAWFUL RENDITION

97.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

98.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

99.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF

### CONVENTION AGAINST TORTURE, CONVENTION RELATING TO THE STATUS OF REFUGEES AND GENEVA CONVENTION - UNLAWFUL RENDITION

100.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of his rights under the Third and Fourth Geneva Conventions, the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954).

102.    Accordingly, Petitioner is entitled to habeas corpus, declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

24

## SIXTEENTH CLAIM FOR RELIEF

### ALIEN TORT STATUTES - UNLAWFUL RENDITION

103.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under 28 U.S.C. §§ 2241 and 2242, and under customary international law which may be vindicated under the Alien Tort Statute, 28 U.S.C. § 1350.

105.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

### VIOLATION OF THE RIGHT TO COUNSEL AND ACCESS TO THE COURTS

106.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

107.    Respondents consistently have contrived to intrude upon detained Petitioners' right to consult with counsel by conditioning counsel's access to detainees on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner's attorney-client privilege, work product privilege, right to counsel and right to due process.


## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief and requests that this Court:

1.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioner from his current unlawful detention;

2.    Order that Petitioner be brought before the Court to vindicate his rights;

3.    Order that Petitioner cannot be transferred to any other country without the knowing consent and written agreement of Petitioner (obtained voluntarily and

25

without duress) and Petitioner's counsel while this action is pending;

4.    Order that Petitioner cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

5.    Order Respondents to allow counsel to meet and confer with Petitioner in private and to engage in unmonitored attorney-client conversations;

6.    Order Respondents to cease all interrogations of Petitioner, direct or indirect, while this litigation is pending;

7.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner;

8.    Order and declare the Executive Order of November 13, 2001, *ultra vires* and unlawful as applied to Petitioner;

9.    Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner without due process is arbitrary and unlawful and a deprivation of liberty without due process;

10.    Order Respondents to respond to this Petition and to provide counsel with factual returns and any other evidence justifying Petitioner's continued detention; and

11.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the Constitution of the United States, federal statutory law, international law and the treaties to which the United States is a party.

Respectfully submitted,

/s/Billy H. Nolas
Billy H. Nolas (DC 399275; PA 83177)
Assistant Federal Defender
Maureen Rowley (PA 33020)
Chief Federal Defender
David McColgin (PA 42963)
Supervising Appellate Assistant Federal Defender
Cristi Charpentier (PA 62055)
Shawn Nolan (PA 56535)
Mark Wilson (PA 26887)
Assistant Federal Defenders
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520; (215) 928-1100

Dated: August 9, 2006

# Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, to the following persons:

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C.  20530

**Alberto R. Gonzales**
ATTORNEY GENERAL OF THE UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C.  20530

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C.  20301-1000

**Donald Rumsfeld**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C.  20301-1000

**Navy Rear Admiral Harry B. Harris**
COMMANDER, JOINT TASK FORCE-GTMO
JTF-GTMO
APO AE 09360

**Navy Rear Admiral Harry B. Harris**
UNITED STATES NAVY - JUSTICE
Pentagon
Washington, D.C.  20310-0200

**Army Col. Wade F. Dennis**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

**Army Col. Wade F. Dennis**
UNITED STATES ARMY
Army - Pentagon
Washington, D.C.  20310-0200

**Terry Henry**
Senior Trial Attorney
Federal Programs Branch
Civil Division - Room 7144
Department of Justice
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
(Via email and ECF)

**Andrew Warden**
Trial Attorney
Civil Division
Federal Programs Branch
Department of Justice
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
(Via email)

/s/Billy H. Nolas
Billy H. Nolas

Dated:  August 9, 2006