IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ABDULLI FEGHOUL,**<br>Guantanamo Bay Naval Station,<br>Guantanamo Bay, Cuba<br>    Petitioner<br><br>V.<br><br>**GEORGE W. BUSH, et. al.**<br>    President of the United States<br>    The White House<br>    1600 Pennsylvania Avenue, N.W.<br>    Washington, D.C. 20500; | : : : : : : : : : : : : : : : | CIVIL ACTION<br>(HABEAS CORPUS)<br><br>No:   06-CV-00618 (RWR)<br><br>JUDGE RICHARD W. ROBERTS |

**PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, through appointed counsel, hereby responds to the Government's Motion to Dismiss his Writ of Habeas Corpus for Lack of Jurisdiction.

**Procedural History**

On November 16, 2006, Petitioner delivered to the authorities at Guantanamo for mailing to this Court his request for habeas corpus relief (hereinafter "*Petition*"). This *Petition* was docketed by the Court on April 3, 2006. On April 14, 2006, this Court ordered Respondents to file a responsive pleading. On June 1, 2006, Respondents filed a *Motion to Dismiss for Lack of Jurisdiction and a Motion to Transfer the Case to the United States Court of Appeals for the District of Columbia Circuit* (hereinafter "*Motion to Dismiss*"). On July 21, 2006, the World Organization for Human Rights USA filed a *Motion for Leave to Appear as Amicus Curiae or as*

*Assigned Counsel*, a *Motion for Extension of Time for the Submission*, and a *Brief* in response (hereinafter "*WOHR Brief*").[1] On August 4, 2006, Respondents filed a response (hereinafter "*Response*"). On August 8, 2006, undersigned counsel filed a notice of appearance and on August 9, 2006, Petitioner amended his Petition for Habeas Corpus. On August 10, 2006, Petitioner filed a *Motion to Compel Production of Factual Returns and For Entry of Protective Orders*, to which the government responded on August 24. Upon consideration of Petitioner's motion to an extension of time, this Court granted an extension until September 6 for Petitioner to respond to the Government's *Motion to Dismiss*.

### A. This Court has Jurisdiction Since Under the Well Established "Mailbox Rule," Petitioner's Habeas Corpus Petition was filed Prior to the Passage of the Detainee Treatment Act.

In its *Motion to Dismiss*, the government states that this Court lacks jurisdiction and should dismiss the *Petition*, because it was filed "well after the [Detainee Treatment Act] became law." *Motion to Dismiss* at 4. Although the *Petition* was not docketed until April, 2006, it was mailed on November 16, 2005, well before the DTA became law. See *Petition* (mail date noted as "16 November 2005"). Thus, the constructive filing date is prior to the enactment of the DTA and this Court has jurisdiction.

The United States Supreme Court recognized the difficulties faced by *pro se* incarcerated petitioners litigating habeas corpus petitions in Houston v. Lack, 487 U.S. 266 (1988). In Houston, the issue before the Court was whether notices of appeal "are to be considered filed at the moment of delivery to prison authorities for forwarding or at some later point in time." Id. at

---

[1] The *WOHR Brief* is attached as Exhibit 1. Petitioner hereby incorporates by reference all arguments made by amicus counsel in its brief.

268. The Court concluded that the Court of Appeals had jurisdiction over the appeal, which was timely filed, "because the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the clerk." Id. at 276. The Court noted that the petitioner there, like Mr. Feghoul, could not "personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received its notice." Id. at 271. Applying this "mailbox rule" to Petitioner's filing, it is clear that his *Petition*, which was mailed on November 16, 2005, was filed prior to the enactment of the DTA on December 30, 2005. This Court therefore has jurisdiction under Hamden v. Rumsfeld, 126 S. Ct. 2749 (2006), wherein the Court ruled that the jurisdiction stripping aspects of the DTA did not apply to habeas petitions pending at the time of enactment. Id. at 2769, n.15.

The "mailbox rule" was recently applied in this District under similar circumstances. In United States v. Carr, Slip Opinion, 2006 WL 401818 (D.D.C. 2006), Judge Bates held that a habeas petition was timely: "taking into account petitioner's status as a pro se prisoner and, therefore, the application of the so-called 'prison mailbox rule ... this Court will assume that petitioner filed his motion in a timely manner." Id. at *1, n2 (citing Houston; Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001)).

Consistent with Houston, the federal courts consistently apply the mailbox rule to determine filing dates. See e.g. Morales-Rivera v. United States, 184 F.3d 109 (1st Cir. 1999) (holding that *pro se* petitioner's habeas petition is filed on the date that it is deposited in the prison internal mail system for forwarding to the district court, if the prisoner has utilized the prison's system for recording legal mail); Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001) (holding that the prisoner mailbox rule applies to habeas petitions); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (holding

3

that both *pro se* habeas petitions and motions filed under § 2255 by prisoners are deemed filed at the moment they are delivered to the prison authorities for mailing to the district court); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998) (holding that a pro se prisoner's habeas petition is filed, for the purpose of determining AEDPA's applicability, when it is delivered to the prison authorities for mailing); In re Sims, 111 F.3d 45, 47 (6th Cir. 1997) (per curiam) (holding that habeas petitions will be deemed filed on the date that the petitions are given to the prison authorities for mailing); Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999) (holding that the Houston mailbox rule should be extended to prisoners filing *pro se* habeas petitions); Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999) (en banc) (holding that a *pro se* prisoner's petition for writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the court clerk); Miles v. Prunty, 187 F.3d 1104, 1106-1107 & n2 (9th Cir. 1999) (stating that the prisoner mailbox rule "would appear to" apply to the defendant's habeas petition); Hoggro v. Boone, 150 F.3d 1223, 1226 n.3 (10th Cir. 1998) (stating that a prison mailing receipt that shows the date petitoner's habeas petition was placed in the prison mail system is proof that the petition was "filed" on the date it was mailed); Wade v. Battle, 379 F.3d 1254, 1259 (11th Cir. 2004) (noting that the Georgia Supreme Court has applied the prison mailbox rule to *pro se* prisoners who are filing notices of appeal after a decision on their habeas corpus petitions but withholding judgment on the issue of the rule's applicability to initial *pro se* habeas petitions); U.S. v. Rumph, Slip Opinion, 2006 WL 1889740 (E.D.Va. 2006) (stating that, under the prison mailbox rule, a *pro se* defendant's habeas motion is considered filed when it is dispatched by the defendant through the prison's mail system).

    The federal rules are also in accord. See F.R.A.P. Rule 4(c)(1) ("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."); F.R.A.P.

Rule 25(a)(2)(C) ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing.").

The prison mailbox rule and the rationale for the rule clearly apply to Mr. Feghoul. In fact, his situation makes it even more difficult (and inappropriate) to adhere to filing requirements than the typical *pro se* petitioner incarcerated more closely to the courthouse. This Court should conclude that the filing date of Mr. Feghoul's *Petition* is November 16, 2005, the date he placed it in the government's hands. Once that determination is made, the question of this Court's jurisdiction is quite easy to answer.[2]

As a fall back position, Respondents assert that even if the Court considers the filing date prior to the enactment of the DTA, the Court still has no jurisdiction. See *Motion to Dismiss* at 4, n.2; *Response* at 3. However, as the Supreme Court has clearly stated, the DTA does not strip the District Court of jurisdiction over pending Petitions. Petitioner challenges his prolonged, indefinite detention as violating his due process rights under the common law and the Fifth Amendment to the Constitution of the United States, as well as procedures established by the Third and Forth Geneva Conventions and International Humanitarian and Human Rights law, and asserts, as well, that the conditions of his confinement violate the law of nations under the Alien Tort Statute, 28 U.S.C. §1350. Thus, the relevant provision of the DTA governing

---

[2]The government, in its Response to amicus counsel's brief, implicitly concedes that the mailbox rule does apply, and shifts its requests for relief from a request for dismissal to a request that the Court stay all proceedings. See *Response* at 6. As discussed below, the request for a stay should be denied. Moreover, in the unlikely event that the Court determines that the Petition was not filed pre-DTA, in spite of the application of the mailbox rule, Petitioner relies on his inclusion as a habeas petitioner in John Does 1-570 v. Bush, no. 05-cv-00318 (CKK). As developed in greater detail in the *WOHR Brief*, Petitioner was clearly in Guantanamo at the time the "Doe Petition" was filed. As such, retroactive application of the DTA to his claims for relief is inappropriate.

Petitioners' claims is section 1005(e)(1).

As the Supreme Court held in its recent decision in Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006), section 1005(e)(1) "addresses jurisdiction in *habeas* cases and other actions 'relating to any aspect of the detention.'" Id. at 2767.  Hamdan, which also involved a *habeas* petition that was pending prior to the enactment of the DTA, squarely held "that § 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment." Id. at 2769 n.15.  This Court has since applied Hamdan in determining that it has jurisdiction to hear and determine *habeas* petitions and related matters brought by Guantánamo detainees.  See Hamoud v. Bush, No. 05-1894 (RWR), Memorandum Order, p. 1 n.1 (July 5, 2006) (dkt. no. 23) (citing Hamdan as making clear that it has authority over Guantánamo detainee's *habeas* petition and challenge to stay of proceedings).  See also Hamdan, 126 S.Ct. at 2810 (Scalia, J., dissenting opinion) ("the Court today concludes that ... every 'court, justice or judge' before whom such a habeas application was pending on December 30 has jurisdiction to hear, consider, and render judgment on it.").

> **B.    The Court Should Deny Respondent's Request to Transfer this Properly Filed Habeas Action to the Court of Appeals.**

Respondents argue that, in the alternative, the Court should transfer the Petition to the Court of Appeals under Sections 1005(e)(2) and (e)(3) of the DTA.  See *Motion to Dismiss* at 5 - 7; *Response* at 3.  However, those provisions have no bearing on the claims at issue here.  As the Supreme Court recognized, "subsections (e)(2) and (e)(3) grant jurisdiction only over actions 'to determine the validity of any final decision' of a CSRT or commission." Hamdan, 126 S. Ct. at 2767.  Thus, a petitioner who is "not contesting any 'final decision' of a CSRT or military

6

commission . . . does not fall within the scope of subsection (e)(2) or (e)(3)." Id. Moreover, the Supreme Court explicitly rejected Respondents' argument that section 1005(e)(2) creates an "exclusive review" mechanism in the D.C. Circuit Court of Appeals that precludes Petitioners determined by the CSRT to be enemy combatants from seeking habeas relief in the district courts. Specifically, the Supreme Court noted, "There is nothing absurd about a scheme under which pending habeas actions—particularly those, like this one, that challenge the very legitimacy of the tribunals whose judgments Congress would like to have reviewed—are preserved, and more routine challenges to final decisions rendered by those tribunals are carefully channeled to a particular court and through a particular lens of review." Id. at 2769.

Any interpretation of the DTA that would preclude judicial review of Petitioner's constitutional claims would raise substantial constitutional questions. See Hamdan, 126 S. Ct. at 2769 n.15. (noting that construing a statute to "preclude review of a pure question of law by any court would give rise to substantial constitutional questions") (citing I.N.S. v. St. Cyr, 533 U.S. 289, 300 (2001)).

Respondents' attempt to cast Petitioner's claims as nothing more than a challenge to the validity of his CSRT decision subject to the jurisdiction-stripping provision of section 1005(e)(2) fails. As noted, Petitioner does not merely seek to challenge "the validity of" his CSRT determinations but more broadly asserts that there is no legal basis for his detention. Therefore, Respondents cannot rely on the Court's statement in Hamdan that "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3)," 126 S. Ct. at 2769 n.14, to apply the jurisdictional stripping provision of Section 1005(e)(2) here. Petitioner's

broad statutory and constitutional claims cannot possibly be construed as a challenge to a "final decision" of the CSRT and under no viable construction fall within the purview of sections 1005(e)(2) or (e)(3).[3]

### C. The Court Should Enter the Standard Protective Orders, Require Respondents to Provide Factual Returns and Move the Litigation Forward.

In his *Petition*, Mr. Feghoul specifically requested counsel. Petitioner now has counsel and is certainly entitled to confer with counsel. See Al Odah v. United States, 346 F.Supp. 2d. 1, 7 (D.D.C. 2004). Petitioner has requested that the Court enter the standard protective orders in this case and reiterates that request.

In their *Response*, Respondents request a stay of all proceedings, arguing that this Court lacks jurisdiction to enter these orders. This Court has specifically rejected the government's argument in Said v. Bush, Civ. No. 05-2384 (RWR) (D.D.C. May 23, 2006) at *10 ("Allowing Petitioners to meet with their lawyers, however, is not the type of interim relief that even remotely risks infringing on the Court of Appeals' possible exclusive jurisdiction."). Many other members of this Court have also repeatedly rejected the government's position. See e.g. Khan v. Bush, Civ. No. 05-1491 (JR) (D.D.C. Apr. 12, 2006); Awad v. Bush, Civ. No. 05-2379 (JR) (D.D.C. Apr. 11, 2006); Razakah v. Bush, Civ. No. 05-2370 (EGS) (D.D.C. Mar. 17, 2006); Al Salami v. Bush, Civ. No. 05-2452 (PLF) (D.D.C. Apr. 13, 2006); Al Shareef v. Bush, Civ. No. 05-2458 (RWR) (D.D.C. Apr. 12, 2006); Said v. Bush, Civ. No. 05-2384 (RWR) (D.D.C. Apr.

---

[3] Indeed, the only reason that the CSRT is at all relevant to Petitioner's habeas litigation is that the government has decided to use those transcripts, in general, as factual returns to habeas petitions when ordered by the Court to provide them. Certainly, that government decision does not transform Petitioner's overall challenge to his unlawful detention to a mere appeal of the CSRT's determination.

12, 2006); Alsaaei v. Bush, Civ. No. 05-2369 (RWR) (D.D.C. Apr. 12, 2006); Nasrullah v. Bush, Civ. No. 05-891 (RBW) (D.D.C. June 12, 2006). In each of these cases, the Court has entered the protective order in the face of the government's position that it lacks jurisdiction under the DTA. Petitioner requests that this Court do the same and deny the government's request for a stay.

> D. **The Court Should Deny the Motion for the Additional Reasons Set Forth in the *WOHR Brief*.**

Petitioner's Habeas Petition was filed prior to the passage of the DTA. The Supreme Court's decision in Hamdan is dispositive. This Court clearly has jurisdiction and need not reach the question of the constitutionality of the Combatant Status Review Tribunals or the question of the DTA's violation of the Suspension Clause. However, should the Court reach these issues, Petitioner relies upon the arguments set forth by the World Organization for Human Rights USA as outlined in its amicus brief. See *WOHR Brief* at 11-16 (CSRT procedures do not comport with due process); id. at 17-22 (DTA violates Suspension Clause).

WHEREFORE, for all of the foregoing reasons, Petitioner respectfully requests that this Honorable Court deny Respondent's Motion.

Respectfully submitted,

/s/Billy H. Nolas
Billy H. Nolas (DC 399275; PA 83177)
Assistant Federal Defender
Maureen Rowley (PA 33020)
Chief Federal Defender
David McColgin (PA 42963)
Supervising Appellate Assistant Federal Defender
Cristi Charpentier (PA 62055)
Shawn Nolan (PA 56535)
Mark Wilson (PA 26887)
Assistant Federal Defenders
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520; (215) 928-1100

Dated: September 6, 2006

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served via the e-filing system on the following counsel of record for respondents:

Mr. Terry Henry
Ms. Preeya M. Noronha
US DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 7226
Washington, DC 20529-0001

/s/Billy H. Nolas
Billy H. Nolas

Dated:  September 6, 2006